**EVE OF MILADY and Milady Bridal, Inc., Plaintiffs,**

v.

**IMPRESSION BRIDAL, INC., and Nick Yeh, Defendants.**

No. 96 CIV. 8893(SAS).

United States District Court, S.D. New York.

July 17, 1997.

Robert C. Faber, Marc Lieberstein, Ostrolenk, Faber, Gerb & Soffen, LLP, New York, NY, for Plaintiffs.

Sharon P. Carlstedt, Reid & Priest, LLP, New York, NY, C. Steven McDaniel, Jeff A. McDaniel, Conley, Rose & Taylon, Houston, TX, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Appearing before me for the second time in four months, plaintiffs Eve of Milady and Milady Bridal, Inc. seek a second preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure restraining defendants from infringing their copyrights and trademarks, and engaging in unfair competition. Defendants argue, *inter alia*, that they have not unlawfully copied plaintiffs' lace designs and alternatively that plaintiffs' delay in seeking injunctive relief warrants denying the motion. For the reasons stated below, plaintiffs' motion is granted.

### I. Procedural Background

The facts and procedural history of this case prior to this motion were set forth in the March 18, 1997 Opinion and Order, and I need not repeat them here. *See Eve of Milady v. Impression Bridal, Inc.*, 957 F.Supp. 484, 486–87 (S.D.N.Y.1997).

On April 2, 1997, defendants' counsel informed the Court that defendants had complied with the March 18 Opinion and Order, and were no longer displaying, distributing or selling bridal dresses with the infringing lace designs. *See* Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction ("Plaintiffs' Memo."), Ex. C at 4–5 (Transcript of April 2, 1997 Conference). At that time, I directed defendants to make their allegedly revised dresses available to plaintiffs, and to send plaintiffs an actual sample of the allegedly revised lace designs. *See id.* at 12. On April 7, 1997, Eve Muscio (President of Eve of Milady, Inc.) and counsel Robert Faber viewed the allegedly revised lace designs at a bridal dress show in New York, but were not permitted to take photographs. Defendants did not send photographs of the allegedly revised lace designs to plaintiffs until May 21, 1997. *See* Plaintiffs' Memo, Ex. E (Letter of Sharon P. Carlstedt, local counsel to defendants, to Robert Faber, plaintiffs' counsel, dated May 21, 1997). Plaintiffs immediately responded by sending a "cease-and-desist" letter with regard to four of their lace designs to defendants' counsel on the same day. *See id.*, Ex. F. Plaintiffs' final registration of the four lace designs was returned on June 16, 1997 and they moved for preliminary relief two days later.

### II. Applicable Legal Standards

#### A. Standards for Preliminary Injunction Pursuant to Rule 65

I have already discussed the standards for preliminary injunctive relief of the type plaintiffs seek here in the March 18, 1997 Opinion and Order, and will only briefly review them here. "Because of the great potential for harm which may occur from the issuance of a preliminary injunction, the party seeking the injunction must sustain a

heavy burden." *Ringling Brothers–Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.,* 937 F.Supp. 204, 207 (S.D.N.Y. 1996). The weight of this burden is well-settled. The party seeking such relief must demonstrate (1) irreparable injury and (2) a likelihood of success on the merits or a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor. *See Maryland Casualty Company v. Realty Advisory Board on Labor Relations,* 107 F.3d 979, 984 (2d Cir.1997); *Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 135–36 (2d Cir.1992).

**B. Standards for Claim of Copyright Infringement**

■■■ "In order to establish a claim for copyright infringement, a plaintiff must show ownership of a valid copyright and the defendant's infringement by unauthorized copying." *Laureyssens,* 964 F.2d at 139. It is axiomatic that "actual copying can be inferred from the defendant's access to the copyrighted work and substantial similarity between the copyrighted work and the alleged infringement." *Id.* Thus, a two-pronged analysis is used to determine whether a defendant has infringed a copyright. First, a plaintiff must "show that [her] work was actually copied by proving 'access and substantial similarity between the works.'" *Id.*[1] *See also Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.1986). Then, it must be shown that this copying constituted an "improper" or "unlawful" appropriation through proof that "substantial similarities

relate to protectible material." *Laureyssens,* 964 F.2d at 139–40; *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir.1946).

■■■ To determine whether there is a substantial similarity between the works of the plaintiffs and those of the defendants, the finder of fact must ascertain whether "the ordinary observer, unless [s]he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960) (L. Hand, J.). *See also Arica Institute, Inc. v. Palmer,* 970 F.2d 1067, 1072 (2d Cir.1992) (applying same standard and quoting *Peter Pan Fabrics, Inc.*); *Churchill Livingstone, Inc. v. Williams & Wilkins et al.,* 949 F.Supp. 1045, 1052 (S.D.N.Y.1996) (same). In cases involving a design containing both protectible and unprotectible elements, however, the finder of fact may not rely on overall impressions to determine whether unlawful appropriation has occurred. *See Laureyssens,* 964 F.2d at 141 ("However, where design contains both protectible and unprotectible elements ... the observer's inspection must be more 'discerning,' ignoring those aspects of a work that are unprotectible in making the comparison."). *See also Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765–66 (2d Cir.1991). Rather, the court must compare only the protected portions of the design to determine whether infringement has occurred. *See Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),* 71 F.3d 996, 1003 (2d Cir.1995).

---

**1.** It has been observed that the term "substantial similarity" as it is used in this context is confusing because some similarities are not substantial but are nevertheless highly probative of copying. *See* Alan Latman, *"Probative Similarity" As Proof in Copying: Toward Dispelling Some Myths in Copyright Infringement,* 90 Colum. L. Rev. 1187, 1204 (1990) (advocating the use of the term "probative similarity" rather than "substantial similarity" when analyzing claims of copyright infringement). As Professor Latman observed, "[a] similarity, which may or may not be substantial, is probative of copying if, by definition, it is one that under all the circumstances justifies an inference of copying." *Id.* at 1190. In other words, in some cases even minor similarities may constitute proof of copying—and thus satisfy the "substantial similarity" test—because their nature belies mere coincidence.

However, the term "substantial similarity" has a second meaning. Not only must plaintiffs establish that defendants copied, and copied protected material, but also plaintiffs must show that there is a "substantial similarity" between the protectible elements of the works of plaintiffs and defendants, or in other words "that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea." *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 123 (2d Cir.1994). To avoid confusion, I adopt Professor Latman's suggestion and use the term "probative similarity" to mean a similarity that is probative of copying, and the term "substantial similarity" to refer to a similarity that indicates the defendant appropriated the plaintiff's means of expressing an idea.

## III. Discussion

### A. Irreparable Harm

■ A presumption of irreparable harm arises where a plaintiff shows a likelihood of success on the merits of a copyright infringement claim. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977). Thus, a plaintiff that demonstrates a likelihood of success on the merits has met its burden under Rule 65 of showing that it is entitled to preliminary injunctive relief. *See id.*

### B. Likelihood of Success on the Merits

#### 1. *Ownership of Copyrights*

I have already found that plaintiffs' lace designs are copyrightable under 17 U.S.C. § 101, and that plaintiffs' Certificates of Copyright Registration constitute *prima facie* evidence demonstrating their valid ownership of the copyrighted lace designs. *See Impression Bridal, Inc.*, 957 F.Supp. at 489. As defendants do not argue in their opposition papers that plaintiffs have failed to establish ownership of their lace designs, there is no real dispute as to this issue and I need not discuss it further.

Plaintiffs' Certificates of Registrations indicate in Section 6(b) that plaintiffs' copyright claim included "ADDITIONAL LACE PATTERNS, ARRANGEMENT OF LACE PATTERNS AND PATTERN ON DRESS".[2] *See* Declaration of Eve Muscio ("Muscio Decl."), dated June 1997, Ex. 1. Thus, the plaintiffs' copyrights extend not just to the pattern or weave of the lace itself, but also to the way that lace is placed and arranged on the dresses. *See Knitwaves*, 71 F.3d at 1004 (designer of a fabric may copyright its selection and arrangement of patterns). The term "lace design" as used in this Opinion and Order refers to all the protectible elements of plaintiffs' copyrighted work, including the lace pattern and the way that lace pattern is arranged and placed on plaintiffs' dresses.

#### 2. *Infringement by Defendants and Unlawful Appropriation*

Defendants concede that they have copied plaintiffs' dresses: "Impression does not contest that actual copying, e.g., copying in a physical sense, occurred." Defendants' Response to Plaintiffs' Memo ("Defendants' Memo") at 2 n. 1. Rather, they argue that their copying is not actionable because they altered the designs enough so that their dresses are not "substantially similar" to plaintiffs' dresses. Accordingly, the central issue raised by plaintiffs' motion is whether plaintiffs have established a "substantial similarity" between the protectible elements of their lace designs and those of defendants that would constitute a copyright infringement.

As stated earlier, the appropriate test to evaluate whether "substantial similarities" exist is whether "the ordinary observer, unless [s]he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." The parties agree that in applying this test, the Court should consider not only the lace designs, but also their placement and arrangement on the dresses. *See* Defendants' Memo at 5 ("At best, the scope of protection afforded a lace arrangement is the appearance of a given lace design as that lace design is arranged on a dress"); Plaintiffs' Memo at 6. *See also Knitwaves, Inc.*, 71 F.3d at 1004; *Folio Impressions, Inc.*, 937 F.2d at 764–65.

■ To determine whether plaintiffs have established that "substantial similarities" exist between their lace designs and those of defendants, I conducted three *in camera* reviews. First, I examined plaintiffs' lace patterns alongside defendants' revised lace patterns. Second, I reviewed photographs of bridal dresses incorporating these lace designs to evaluate the possible similarities between the placement and arrangement of the lace designs on the bridal dresses. Finally, I examined the actual bridal dresses that incorporate the disputed lace designs.

---

**2.** I interpret "arrangement of lace patterns" to mean the distinctive manner or style in which the lace designs are arrayed on the dresses, whereas I interpret "pattern on dress" to mean the choice of location (or "placement") of the lace designs on the dresses.

I find that plaintiffs have met their burden of showing substantial similarities between the protectible elements of their lace designs and each of the defendants' "revised" lace designs. As with the bridal dresses I analyzed four months ago, defendants' revised designs "bear a striking similarity to the copyrighted lace designs featured in plaintiffs' bridal dresses." *Impression Bridal, Inc.*, 957 F.Supp. at 490. Slight design differences in the lace patterns may be identified when the samples are placed side by side. Were I merely ruling on the issue of whether defendants' lace patterns themselves are substantially similar to plaintiffs', I would conclude that only defendants' style number 671 is substantially similar to plaintiffs' copyrighted work. The patterns of defendants' lace style numbers 669, 670 and 673 are not so similar to the corresponding style numbers of plaintiffs as to constitute "substantially similar" works.

But when viewed on the dresses themselves, the slight discrepancies between the lace patterns are eclipsed by the almost total likeness in the arrangement and placement of the designs on the dresses, which as stated earlier are elements of the plaintiffs' protectible work. Even a quick visual inspection of the bridal dresses shows that the arrangement and placement of lace on the arms, neck, shoulders, waist and hem line of defendants' dresses almost exactly replicates the plaintiffs' arrangement and placement of their lace designs. I therefore find plaintiffs have met their burden of establishing substantial similarities between their lace designs and those of defendants.

### C. Plaintiffs' Alleged Delay in Filing Suit

█ Before defendants sent plaintiffs the photographs of their allegedly revised lace designs, plaintiffs' only evidence to support claims of copyright infringement was the expert opinion of Eve Muscio, who viewed the defendants' revised dresses on April 7. At the April 2, 1997 conference, I noted that plaintiffs would have difficulty meeting the high standard of Rule 65 if their claims rested only on an expert's determination that defendants' revised lace designs were "substantially similar" to those of plaintiffs. I therefore directed defendants to send actual samples of the revised lace designs to plaintiffs.

Defendants have not explained why they waited until May 21 to send plaintiffs samples or photographs of the revised lace designs. When defendants finally did so, plaintiffs responded with alacrity by sending a cease-and-desist letter to defendants the same day, and by filing this motion two days after receiving the final registration of the four lace designs allegedly infringed by defendants. The only real delay appears to have been caused by defendants' failure to comply with my instruction to send plaintiffs a sample of the revised lace designs. I therefore reject defendants' argument that plaintiffs have delayed too long to warrant a grant of equitable relief.

### IV. Plaintiffs' Remedy

For the reasons set forth above, I find that plaintiffs have demonstrated both irreparable harm and a likelihood of success on the merits with respect to their copyright infringement claim. Therefore, a preliminary injunction is an appropriate remedy. As in my previous Order, I will not issue a general recall order, but will grant plaintiffs' motion for a recall order with regard to orders placed by retailers for their own behalf (as opposed to orders placed by retailers on behalf of ultimate consumers). *See Impression Bridal, Inc.*, 957 F.Supp. at 491. It is accordingly

ORDERED that the March 18, 1997 Order remains in effect, and

ORDERED that, as of July 8, 1997, until final decision of plaintiffs' claims, defendants, including their agents, servants, and employees shall be restrained pursuant to Fed. R. Civ.P. 65(a) from:

    (a) displaying or otherwise using plaintiffs' copyrighted lace designs in any way in connection with any advertising, display, solicitation of sales, promotion or distribution of defendants' bridal dresses;

    (b) manufacturing, having manufactured and selling bridal dresses which are substantially similar to plaintiffs' bridal dresses, including dress style numbers

669, 670, 671 and 673, and incorporate plaintiffs' copyrighted lace designs;

(c) copying, manufacturing, having manufactured or selling bridal dresses which include exact or substantially similar copies of any of the four lace designs designated as plaintiffs' numbers 364, 444, 301 and 431 (hereinafter referred to collectively as "copyrighted lace designs");

(d) copying, manufacturing, having manufactured, or selling exact or substantially similar copies of any of plaintiffs' copyrighted lace designs.

(e) filling orders for defendants' bridal dresses that incorporate any of plaintiffs' copyrighted lace designs other than (i) those orders already placed by ultimate consumers, or (ii) those orders already placed by retail stores on behalf of individual ultimate consumers.

It is additionally ORDERED that, pursuant to Fed.R.Civ.P. 65(c) and 65.1, plaintiffs shall issue a bond in the amount of $25,000 [3] for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

## V. Conclusion

The March 18 Order restrained defendants from copying, manufacturing, displaying, or otherwise using exact or substantially similar copies of plaintiffs' copyrighted lace designs. It is now evident that defendants failed to comply with the letter or the spirit of that Order, preferring instead to require plaintiffs to move for a second preliminary injunction and risking being held in contempt of court for failure to abide by the March 18 Order. Such conduct is both unwise and unfair: unwise because the sanctions for civil contempt are severe, and unfair because repetitive preliminary injunction motions unduly tax judicial resources. Both parties would be better served by resolving their differences out of court, or by swiftly proceeding to trial.

3. Plaintiffs' $75,000 bond posted pursuant to the March 18 Order shall remain posted until final

A pretrial conference is scheduled for 4:30 P.M. on August 5, 1997.

SO ORDERED.

determination of plaintiffs' claims.