**EXPRESS, LLC, a Delaware limited liability corporation, Plaintiff,**

v.

**FETISH GROUP, INC., a California corporation, Defendant.**

**No. CV 05–2931 SVW(JTLX).**

United States District Court, C.D. California.

March 24, 2006.

---

**1214**

Frank J Colucci, David M Dahan, Colucci & Umans, New York NY, and Diana M Torres, O'Melveny and Meyers, Los Angeles, CA, for Express LLC.

Lynda J. Zadra–Symes, Diane M. Reed and David G. Jankowski, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, for Fetish Group Inc.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]

WILSON, District Judge.

### I. INTRODUCTION

This copyright case concerns a camisole. Plaintiff Express, LLC ("Express") is a retailer of men's and women's clothing. Defendant Fetish Group, Inc. ("Fetish") designs, manufactures, and distributes clothing for men, women, and children. In 2003, Fetish unveiled a camisole which featured scalloped lace edging along the hemline and around the top and a three-flower embroidery design below the right hip. Fetish claims, and in 2005 obtained, a copyright in the camisole.[1] In 2005, Express began selling a competing camisole which resembled Fetish's camisole in a number of ways. Fetish took note and warned Express' counsel of its potential infringement of Fetish's copyright. In response, Express withdrew its camisole from the market. Express, however, subsequently concluded that Fetish's copyright was invalid. Having taken its camisole off the market at the height of the spring season in response to and reliance upon Fetish's representations, Express filed this suit for damages and declaratory relief.[2] Express alleges that Fetish fraudulently induced Express to stop its sales of its camisole and seeks to have Fetish's copyright declared invalid. In response, Fetish filed an answer and counterclaim alleging that Express infringed its copyright.[3]

On August 16, 2005, the Court issued an order (the "Order") requesting further briefing on a number of issues raised in the motion for summary judgment. The Court requested clarification of or further briefing on (1) which elements of the GH268 camisole Fetish claims a copyright

---

1. Strictly speaking, Fetish did not obtain a copyright in the camisole but only in certain elements of the camisole.

2. Express filed suit on April 21, 2005. The complaint includes claims of fraud and unfair business practices under Cal. Bus. & Prof. Code §§ 17200 *et seq.*, in addition to its claims under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

3. On May 31, 2005, Fetish filed Defendant's Answer to Complaint and Counterclaims. On June 17, 2005, Fetish filed Defendant's First Amended Answer to Complaint and Counterclaims.

in; (2) whether it is proper to deny a copyright owner the presumption of validity when there are material, if inadvertent, mistakes in the registration; (3) whether the presumption of validity applies in this case only to those elements of the garment that are described in or discernable from the registration or whether it applies to all elements of the garment in which Fetish claims a copyright; (4) whether Cheung's testimony regarding the functional nature of the scalloping raises an issue of fact regarding copyrightability; and (5) whether Cheung's testimony regarding the Lace 8297 raises an issue of fact regarding originality. Upon further consideration, it appears that the latter two questions need not be addressed in order to dispose of the motion.

As more fully described below, the Court GRANTS Fetish's motion for summary judgment.

## II. FACTS

Fetish designs, manufactures, and distributes, throughout the United States and around the world, distinctive, high-quality clothing. Upscale retail department stores and boutiques sell Fetish's clothing.

Fetish's co-owner, Michele Dahan ("Dahan"), is the principal designer for Fetish. She designs a women's clothing line for Fetish under the brand name "Gold Hawk." In 2003, Dahan allegedly designed a tunic for Gold Hawk collection known internally at Fetish as the GH268 tunic ("GH268 Tunic").

The GH268 Tunic features (1) scalloped lace edging along the hemline and around the top of the garment, (2) a three-flower embroidery design below the right hip of the garment, and (3) lace in the top back region of the garment.

In or about October 2003, Fetish began showing potential customers the Gold Hawk collection, including the GH268 Tunic. Fetish began shipping the GH268 Tunic to customers in or about December 2003.

In preparation for the Spring 2005 season, which runs from February to July, Express ordered approximately 298,559 units of a thigh-length camisole ("Express Long Camisole") in ten different spring colors. In addition, Express ordered approximately 321,863 units of a shorter, waist-length camisole ("Express Short Camisole"), also in a variety of colors. Although similar, the Express Short Camisole differs from the Express Long Camisole in several respects. In particular, the Express Short Camisole does not have a three-flower embroidery design near the hemline.

In February 2005, Fetish's counsel informed Express' counsel that the Express Long Camisole violated Fetish's copyright in the GH268 Tunic.

On March 4, 2005, Express' counsel sent Fetish's counsel a sample of the Express Short Camisole in order to determine whether Fetish had any objections to it. On March 9, 2005, Fetish's counsel informed Express' counsel that "[y]our clients [sic] continued sale of the short camisole that was sent to our office under cover of March 4, 2005 will not violate any of our clients [sic] rights." (Colucci Decl. ¶ 7, Ex. 3.)

On March 4, 2005, the same day that Express' counsel sent Fetish's counsel a sample of the Express Short Camisole, Fetish applied to register its alleged copyright in the GH268 Tunic with the United States Copyright Office ("Copyright Office"). Fetish filed two applications, both on the same day, both signed by Fetish's President, Raphael Sabbah. The first application was for a work entitled "Lace Tunic GH268." (Sabbah Decl. ¶ 5, Ex. 1.) Fetish described the "nature of the work"

as a "garment with lace and embroidery design." (*Id.*) The second application was for a work entitled "Lace with Roses (GH268)." (*Id.* at ¶ 7, Ex. 2.) Fetish described the "nature of the work" as a "lace design." (*Id.*)

The Copyright Office accepted the first application, but deleted the phrase "garment with" from the application "because this phrase implied [a] claim in an item of wearing apparel." (*Id.* at ¶ 9, Ex. 3.) The Copyright Office denied the second application because it viewed the "lace design" in the second work as the "same" as the first. (*Id.*) The Copyright Office explained that "[a]ll of the copyrightable content in LACE WITH ROSES (GH268) is contained in LACE TUNIC GH268." (*Id.*)

After learning of Fetish's copyright, Express contacted its manufacturers in the Far East to determine the origin of the lace trim that had been used in the production of the Express Long Camisole. After concluding that the lace trim used in the Express Long Camisole was in the public domain, Express confronted Fetish's counsel with this information before filing suit on April 21, 2005.

On May 19, 2005, Fetish filed a supplemental registration which added the following information in section 6(a) ("Preexisting Material") of the VA copyright form: "The lace trim on the garment is preexisting material and Claimant claims no copyright in the lace trim." (Sabbah Decl. ¶ 12, Ex. 4.) On May 25, 2005, Fetish further amended its registration by adding the phrase "new design on garment" to section 6(b) ("Material Added to this Work"). (*Id.*)

## III. DISCUSSION

Fetish alleges that the Express Long Camisole infringes its copyright in the GH268 Tunic by copying the arrangement and shaping of the trim along the top and bottom of the GH268 Tunic and the three-flower embroidery design and its placement below the lower right hip of the GH268 Tunic. Because it believes that no genuine issues of material fact exist, Fetish seeks summary judgment with respect to the issue of infringement. The Court ultimately finds that Fetish is only entitled to thin copyright protection, such copyright protection flowing from the embroidery design in the GH268 Tunic. However, because the Express Long Camisole is virtually identical to the GH268 Tunic—both overall and specifically with respect to the embroidery design—the Court finds that Express has infringed this thin copyright.

### A. Summary Judgment

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–34, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly proba-

tive does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000).

Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party—over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

### B. Copyright Infringement

■ To prevail on a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work which are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir.1996).

#### 1. Ownership of a Valid Copyright

■ A certificate of copyright registration constitutes prima facie evidence of copyright ownership. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."). Accordingly, submission of a certificate of registration by the copyright holder shifts to the alleged infringer the burden of proving invalidity. *Entm't Research Group, Inc. v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir.1997). In order to rebut the presumption of validity, an alleged infringer must offer "some evidence or proof to dispute or deny the [copyright holder's] prima facie case of infringement." *Id.* Because "originality is the indispensable prerequisite for copyrightability," the alleged infringer may rebut the presump-

tion of validity by showing that "the [copyright holder's] work is not original." *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir.1992).

Before going to Express' rebuttal of the presumption of validity of the copyright, the Court first addresses exactly what copyright protection Fetish is claiming, what copyright protection Fetish is eligible for given its copyright registration materials, and whether Fetish made material omissions or errors in its copyright registration application so that the presumption of validity may be denied Fetish. *See* 2–7 *Nimmer on Copyright* § 7.20[B]. Finally, the Court determines whether Express has successfully rebutted the presumption of validity.

*What Is the Scope of Fetish's Copyright?*

This is a two-part question: First, what is the scope of the copyright claimed by Fetish? Second, does Fetish's copyright registration limit Fetish's copyright to something less than what Fetish claims?

*What is the scope of the copyright claimed by Fetish?* Fetish claims a copyright in all of the design aspects of the GH268 Tunic that involve the selection and placement of the lace and the embroidery. Fetish claims a copyright in (1) the selection, placement and arrangement of the lace flowers in conjunction with the embroidered stem and leaves; (2) the selection, shaping, arrangement, and placement of the lace in the bust region; (3) the selection, shaping, arrangement and placement of the lace in the upper back region; and (4) the selection, shaping, arrangement, and placement of the lace along the hemline.

More specifically, with respect to the flowers and embroidery, Fetish claims the design elements of

(1) the particular appearance of the whimsical embroidery feature, including

the complex system of stems, leaves, petals, and berries; (2) the locations of the cut-out lace flowers atop the embroidery feature; (3) the election of the lace used for lace flowers; (4) the location of the feature on the right hip of the garment; and (5) the orientation of the feature on the garment.

(Def. Supp. Mem. P. & A. at 6.)

With respect to the lace in the bust region, Fetish claims the design elements of

(1) the selection of lace trim fabric used for the scalloped lace portion; (2) the shaping of that scalloped lace; (3) the arrangement of the scalloped lace so as to predominantly cover the silk fabric; (4) the arrangement of the scalloped lace so as to create a bow tie appearance centered on the front of the garment; (5) the overlaying of cut-out flowers above each breast and at the center; (6) the selection of lace used for the overlaid lace flowers; (7) the selection of lace used for the "moustache"[4] feature; and (8) the shaping and arrangement of the moustache feature.

(Def. Supp. Mem. P. & A. at 7.)

With respect to the lace in the upper back region, Fetish claims the design elements of

(1) the selection of the lace trim fabric used for the scalloped lace portion; (2) the shaping of that scalloped lace; (3) the arrangement of the scalloped lace so as to predominantly cover the silk fabric; (4) the arrangement of the scalloped lace so as to form a bow tie appearance centered on the back of the garment; (5) the overlaying of a cut-out lace flower at the center; and (6) the selection of lace used for the overlaid flower.

(Def. Supp. Mem. P. & A. at 8.)

With respect to the lace along the hemline, Fetish claims the design elements of

(1) the selection of lace trim fabric used for the scalloped lace; (2) the shaping of that scalloped lace; (3) the arrangement of the scalloped lace so as to predominantly cover the silk fabric; and (4) the arrangement of the scalloped lace to have a "dip" centered at the front of the garment.

(Def. Supp. Mem. P. & A. at 9.)

Fetish claims copyright protection to the decorative details and look of the GH268 Tunic as a whole.

■ *Does Fetish's copyright registration limit Fetish's copyright to something less than what Fetish claims?* In its Order for further briefing, the Court asked whether the presumption of validity applies only to those elements of the garment that are described in or discernable from the registration, or whether the presumption of validity applies to all elements of the garment in which Fetish claims a copyright—put differently, does the registration set the scope for the copyright or does the copyrighted work set the scope for the copyright?

The Court finds that it is the registration that sets the scope for the copyright protection. Fetish's strongest argument that the actual description in the registration is irrelevant to the scope of the actual copyright protection is that, unlike a patent, which is solely a creature of the Patent and Trademark Office, a copyright exists as soon as the original expression is fixed in a tangible medium. *S.O.S., Inc. v. Payday, Inc.* 886 F.2d 1081, 1085 (9th Cir.1989). Registration does not create the copyright. Registration allows the Copyright Office to judge the copyrightability of a piece of work. In exchange for this filter by the Copyright Office, the

4. This refers to the lace that snakes underneath the bodice area.

registered copyright holder is afforded a presumption of a valid copyright. *See* 17 U.S.C. § 410(c). The presumption of validity orders the burdens of proof (it does not create the same strong presumption of validity that attaches to patents). *See Entm't Research Group, Inc. v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir.1997). Additionally, before a party can sue for copyright infringement, that party must have either been granted a registered copyright or had a registration application denied. 17 U.S.C. § 411(a). Again, this litigation requirement seems to flow from a desire to give the courts the benefit of the Copyright Office's expertise.

The registration process may only be a formality, but it does not necessarily follow that its status as a formality means that its particulars should be disregarded. The reason that the registered copyright is entitled to a presumption of validity is that the Copyright Office *has passed judgment on the claimed copyright*, even if the Copyright Office does not extensively examine the registration applications or apply rigorous standards. Thus, if the registration does not cover certain aspects of a claimed copyright, then it simply does not make sense to grant those aspects of the claimed copyright a presumption of validity. Why would those aspects of the claimed copyright have earned a presumption of validity if they were not represented in the registration application? Cases from other courts support this view.

For example, in *Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*, 367 F.Supp.2d 514 (S.D.N.Y.2005), the court observed that the drawing submitted with the copyright registration for a rug design indicated a specific relationship among the colors used in certain parts of the rug design. *Id.* at 520. The court did not hold that the only protected color for the copyright rug design was the color of the rug submitted

as a sample; the court held that the only aspect of the coloring that was claimed as part of the creative work was the relationship among the colors, as described in the drawings. *Id.* In essence, the court was interpreting the color notations on the drawing to mean that color combinations outside the frame of reference of the copyright registration were not protected. That is consistent with the conclusion that the scope of a copyright (at least the scope that is entitled to a presumption of validity) is determined by the registration application.

Similarly, in *U–Neek, Inc. v. Wal–Mart Stores, Inc.*, 147 F.Supp.2d 158 (S.D.N.Y. 2001), the parties disputed whether the plaintiff's copyright registration was limited to the design on a patch sewn onto a piece of clothing, or whether the registration also encompassed the selection, coordination, and arrangement of all the design aspects of the clothing. *Id.* at 168. Rather than simply determine what copyright had been created by virtue of the design on the clothing (as opposed to by virtue of the wording on the registration application), the court found the scope of the copyright to be a material issue of disputed fact. *Id.* Again, this is consistent with the conclusion that the scope of a copyright is determined by the registration application.

The Court finds that the scope of the registered copyright is relevant to the scope of the presumption of validity, and that the scope of the registered copyright is determined by the actual registration application. Thus, the next question is what the scope of the registered copyright is.

*Scope of Registered Copyright.* Fetish's Certificate of Registration for the GH268 Tunic originally stated that the nature of the copyrighted work was "garment with lace and embroidery design." (Sabbah

Decl. Ex. 1.) The Certificate of Registration is on Form VA, which stands for "visual arts." (*See id.;* Oman Decl. ¶ 14.) The Copyright Office Examiner later removed "garment with" to make clear that the tunic itself (a useful article that is not subject to copyright protection) was not claimed under the copyright. (Sabbah Decl. Ex. 3.) Thus, the original Certificate of Registration, as accepted, reads "lace and embroidery design." On May 19, 2005, two and a half months after the original certificate of registration had been filed, Fetish filed a Form CA, which stands for "Correction or Amplification." (Oman Decl. ¶ 20). The Form CA "amplified" that "[t]he lace trim on the garment is preexisting material and Claimant claims no copyright in the lace trim." (Sabbah Decl. Ex. 4.)

While Fetish maintains that its copyright registration, even as amended, covers all the lace and embroidery aspects of the GH268 Tunic, Express argues that by disclaiming any copyright in the lace trim, Fetish reduced its copyright registration to nothing more than "embroidery design." As evidence, Express points to notes made by the Examiner who received the Form CA (the "amplification"). The Examiner's memo discussed a phone call with Fetish's counsel regarding the Form CA. (Dietz Decl. Ex. 1.) The Examiner stated that because the Form CA "was eliminating some authorship from the claim," he needed to confirm that a sufficient amount of originality remained in the work to merit the copyright registration. Thus, he was contacting Fetish's counsel to obtain photographs of the design. The photographs sent to him by Fetish's counsel (attached to the memo) were photos of the full camisole, a close-up of the embroidery, a close-up of the back of the GH268 Tunic (the composition of the lace design along the back) and a close-up of the bodice of the GH268 Tunic (the composition of the lace

on the bodice). (*Id.*) The Examiner commented that the "photos did not show the embroidery design very well." (*Id.*) He also commented that once Fetish's counsel sent the photographs over e-mail, rather than by facsimile, he could see "all of the design details much better." (*Id.*) Based on the photos, the Examiner acceded to the copyright registration with Form CA changes. (*Id.*) The Examiner also received authorization from Fetish's counsel to add "new design on garment" for the 6(b) space on the registration form. (*Id.*) Part 6(b) is under the "derivative work or compilation" section of the registration. (Sabbah Decl. Ex. 1.) It is entitled "Material Added to This Work. Give a brief general description of the material that has been added to this work and in which copyright is claimed." (*Id.*) Express argues that the Examiner's concern about clearly seeing the design details of the embroidery indicates that the Examiner was focused only on the embroidery, such that the Examiner understood the Form CA to disclaim a copyright in any use of the lace, leaving only the embroidery as a copyrightable design. On the one hand, the facts that Fetish's counsel sent photographs not just of the embroidery but also close-up photographs of the bodice and of the back of the GH268 Tunic, and that the Examiner apparently did not tell Fetish's counsel that these photographs were unnecessary indicate that neither the Examiner nor Fetish understood the amended copyright to be focused solely on the embroidery. On the other hand, the facts that the Examiner was unwilling to sign off on the amended copyright until he had seen a detail of the embroidery design, and that the Examiner stated with reference to the embroidery that he "could tell that there was enough complexity that the design was likely copyrightable, but [he] couldn't really see the actual design" indi-

cate that the Examiner was extremely focused on the embroidery design, perhaps to the exclusion of any other aspect of the GH268 Tunic.

Additionally, the Examiner's addition of "new design on garment" could be read to indicate a reference to the embroidery, as opposed to a reference to the embroidery and the placement and arrangement of lace that was already in the public domain. The Form CA stated that the lace trim was in the public domain and disclaimed a copyright in the lace trim. The description of the design as "new," therefore, could be an attempt to distinguish between the lace *and* embroidery design, which was registered in the initial application, and just the embroidery design, which did not involve anything in the public domain.

In contrast, Fetish contends that "lace trim" has a specialized meaning in the garment industry and that the Copyright Office Examiners would have understood that Fetish only intended the Form CA to clarify its disclaimer of copyright in the lace trim itself, and that Fetish still maintained that it had a copyright in the placement and arrangement of the lace on the GH268 Tunic. According to Fetish, "lace trim" has a very specific meaning: lace trim denotes a "one dimensional" lace design, meaning that the design runs only in one direction,[5] and that "the repeating pattern is designed to be cut into strips along a particular direction." (Dahan Supp. Decl. ¶ 4.). Fetish's registration application did not identify the copyrightable matter as "lace trim" but as "lace and embroidery design."

Fetish's expert, Ralph Oman ("Oman"), was the Register of Copyrights from 1985 through 1993, which means that he was "the chief government official responsible for administering the U.S. copyright system." (Oman Decl. ¶ 3.) Oman is currently a lecturer in intellectual property law at George Washington University Law School and has written numerous articles and delivered speeches on copyright law. (*Id.* ¶ 7.) Oman opines that examiners at the Copyright Office would have understood Fetish's copyright registration, as amended by Form CA, to include the placement and arrangement of the lace, as well as the embroidery design. (Oman Supp. Decl. ¶ 3.) In contrast, Express' expert, Bernard Dietz,[6] a former Copyright Office examiner, opines that an examiner would not have understood the amended copyright registration to be for anything more than the embroidery design (along with the lace flowers), not the placement of the lace along the hemline, bustline, etc. (Dietz Decl. ¶ 5.)

The parties thus present a disputed fact on the question of the scope of Fetish's amended registration. Under other circumstances, the Court would deny summary judgment on this ground, as the Court has found the scope of the copyright described in the registration application to be relevant for determining the scope of the registered copyright. However, as will be more fully explicated below, the scope of the registered copyright is not material in this case. Express argues that the amended copyright registration covers only the embroidery design. The Court

---

5. In contrast, "two dimensional" lace has both horizontal and vertical designs and is used for large areas, such as for curtains. (Dahan Supp. Decl. ¶ 4.)

6. Fetish objects to the declaration of Dietz, arguing that his statements are without personal knowledge. However, Dietz is sufficiently experienced to be considered an expert witness and the Court finds his declaration helpful to understanding the perspective of a reasonable person in the Copyright Office. *See* Fed.R.Evid. 702. Thus, the declaration is admissible.

ultimately concludes that the embroidery design is the only aspect of the GH268 Tunic entitled to copyright protection. Thus, the dispute about the scope of the copyright registration is, in the end, irrelevant.

*Did Fetish Omit Information From Its Copyright Registration Application?*

The Court also asked whether Fetish's alleged omission of information from its initial copyright registration application affected the validity of the current registration. Fetish contends that it did not *omit* information in its original registration application; rather, Fetish simply clarified something (namely, that Fetish had not itself designed the lace trim) that had already been impliedly stated in its original registration.

The question here is whether a reasonable Copyright Office examiner would have understood that "lace and embroidery design" did not mean actual design of the lace but instead simply meant the use of existing lace. Fetish's argument is that experienced examiners in the visual arts department of the Copyright Office would not expect that a clothing company such as Fetish would have designed its own lace; rather, they would assume that all that was claimed was the use of the lace. (Oman Decl. ¶ 19.) Oman further states that "[i]n [his] opinion Ms. Ware [the Examiner], an experienced examiner, would most likely have assumed that Fetish Group did not create the preexisting lace fabric that has been attached to the neckline, bust line, and hemline of that garment." (*Id.* ¶ 19.) In contrast, Express argues that an examiner would not have assumed that Fetish meant to claim the use of the lace, as opposed to the actual design of the lace. (Dietz Decl. ¶ 5.)

Again, this is a disputed issue of fact but because the Court finds that any omission did not invalidate the registration, it is not a material fact.

*Does Fetish Have a Valid Registration Despite Its Omission In Its Copyright Registration Application?*

If the Court had found that Fetish had omitted information in its copyright registration, in order for the Court to invalidate Fetish's copyright, the Court would have to find either that (1) the omission was an intentional fraud on the Copyright Office; or (2) that Express was prejudiced by the omission. *Urantia Found. v. Maaherra,* 114 F.3d 955, 963 (9th Cir.1997) ("The case law is overwhelming that inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."). Express does not appear to argue that it was prejudiced by the omission; instead, it argues that the deception was intentional.

Express' allegations that Fetish intentionally and deceptively misled the Copyright Office with its phrasing on the original copyright registration stem from (1) a statement by Fetish's President, Raphael Sabbah ("Sabbah"); (2) a statement by Fetish's designer, Michele Dahan ("Dahan"); and (3) statements made by Fetish's former counsel, Jeffrey Kapor ("Kapor").[7]

■ In Sabbah's declaration, he states that Fetish does not believe that Fetish designed the lace fabric (lace trim) used in the GH268 Tunic:

7. Express also mentions Fetish not having disclosed that the lace trim from which the "moustache" design was derived is different from the lace trim used for the flower/embroidery design and the hemline/bustline. The Court derives no significance from this.

Fetish did not design the lace fabric used in the lace edging of the GH268 Tunic. Rather, Fetish purchases that lace fabric in bolts from a fabric supplier. Accordingly, Fetish does not believe that it has copyright rights in the lace fabric itself, or that Fetish's copyright registration (VA 1–236–387) entitles Fetish to copyright protection in the lace fabric.

(Sabbah Decl. ¶ 10.) According to Express, the copyright registration application (signed by Sabbah) clearly attempted to claim the creation of the design within the lace trim as part of the copyright. But Sabbah's declaration merely states that "Fetish does not believe it has" a copyright in the lace trim itself. Contrary to Express' interpretation of Sabbah's statement in his declaration, his statement does not speak to Sabbah's state of mind when he signed the copyright registration application. It is simply a statement of Sabbah's (Fetish's) current understanding of the copyright registration.[8]

In Dahan's declaration, she stated that with respect to the three flowers of the embroidery on the Fetish garment that "the embroidery pattern incorporates within it a portion of the lace pattern included in the lace of the garment.... I personally designed the three-flower embroidery pattern and its arrangement and location on the GH268 Tunic." (Dahan Decl. ¶ 10.) Express takes issue with the statement that she "personally designed" this pattern, accusing Dahan of misrepresenting to this Court and to the Copyright Office "the fact that she did no more than appropriate these flowers from the lace strip under the bust line of the camisole (which is in the public domain and was disclaimed by Fetish in the Supplemental Registration) and paste those lace flowers onto the twig to form the embroidery." (Pl. Supp. Brief in Support of Opp. To MSJ at 8.) In contradistinction to Express' interpretation, the Court does not read Dahan's declaration testimony as a statement that she personally stitched each stitch of the lace on the three flowers, but simply that she personally chose the flowers to be cut out from the existing lace pattern, chose where to place those flowers, and chose how the embroidery should complement the lace flowers. The Court does not find that Dahan made misrepresentations to the Court. (In fact, it is unclear why this is relevant in any case: the question is whether Fetish made misrepresentations to the Copyright Office in its copyright registration application, not whether Fetish made misrepresentations to the Court).

Finally, Express argues that Kapor, Fetish's counsel when the original copyright registration application was filed, misrepresented to Express' counsel, Frank Colucci ("Colucci") the scope of Fetish's claimed copyright. However, the question is whether Fetish made a misrepresentation to the Copyright Office, not whether Fetish made a misrepresentation to Express' counsel. The Court does not find that Express has raised an issue of triable fact on the question of Fetish's intent to defraud the Copyright Office.

Furthermore, the Court is cognizant that this is an equitable inquiry. *Urantia Found.*, 114 F.3d at 963. Fetish voluntarily amended its copyright registration

---

**8.** Express also intimates that Fetish's failure to disclose the lace trim as a pre-existing material on the copyright registration is evidence of intentional misrepresentation to the Copyright Office. However, as Fetish points out, both Fetish and Express agree that the lace trim was in the public domain and thus not copyrightable material. Only copyrightable material need be disclosed as pre-existing material. *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078 (9th Cir.2000).

upon learning of Express' misunderstanding regarding the scope of copyright protection claimed by Fetish. And the Copyright Office accepted the amended registration. The Court is simply unconvinced that Express has raised the specter of Fetish intentionally defrauding the Copyright Office with its original registration application.

*Can Express Rebut the Presumption of Validity From Fetish's Valid Copyright Registration?*

Having found that Fetish's registration need not be invalidated on the basis of a misrepresentation to the Copyright Office, the Court now turns to whether Express has rebutted the presumption of validity. Express attempts to do so in two ways. First, Express argues that the elements of the GH268 Tunic in which Express claims a copyright are not copyrightable. Second, Express argues that the elements of the GH268 Tunic in which Fetish claims a copyright are not original.

**a. Copyrightability** [9]

■ As a general rule, items of clothing are not entitled to copyright protection. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir.1995) (citing *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir.1989)). This is because items of clothing are generally considered useful articles, and useful articles are not entitled to protection under the Copyright Act. *Morris v. Buffalo Chips Bootery, Inc.*, 160 F.Supp.2d 718, 720 (S.D.N.Y.2001) (noting that "items of clothing are, as a general rule, uncopyrightable 'useful articles' ").[10] The design of a useful article, however, is entitled to protection "if, and only to the extent that, such design incor-

porates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101. Thus, courts have held that the patterns or other artistic features imprinted onto a fabric or that appear repeatedly throughout the dress fabric may be entitled to copyright protection "if they can be identified separately from, and are capable of existing independently of, the utilitarian purpose of the [clothing]." *Entm't Research Group*, 122 F.3d at 1221; *cf. Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 762–65 (2d Cir.1992) (protecting fabric designs as "writings"); *Eve of Milady v. Impression Bridal, Inc.* ("*Eve of Milady I* "), 957 F.Supp. 484, 489 (S.D.N.Y.1997) (same). Stated otherwise, the pattern or design is copyrightable "only to the extent that its artistic qualities can be separated from the utilitarian nature of the garment." *Galiano v. Harrah's Operating Co.*, 416 F.3d 411, 419 (5th Cir.2005).

■ In this case, the utilitarian functions of the GH268 Tunic cannot be protected by copyright. However, because the lace and embroidery accents are totally irrelevant to the utilitarian functions of the tunic, those aspects of the GH268 Tunic are copyrightable. Express argues that because the "placement," "arrangement" and "scalloping" of the lace trim cannot exist separately from the camisole itself, these aspects of the GH268 Tunic cannot be accorded copyright protection. Defendant's understanding of which elements of clothing can be copyrighted is too narrow. The point is that the placement and arrangement of the lace do not relate to the

**9.** "Copyrightable" is used here to simply mean that it is something that is potentially within the range of the copyright statute, as distinguished from a useful article.

**10.** The Copyright Act defines a "useful article" as an "article having an intrinsic utilitarian function that is not merely to portray the appearance of the article." 17 U.S.C. § 101.

functionality of the GH268 Tunic. This view is confirmed by the district court in *Eve of Milady v. Impression Bridal, Inc.* ("*Eve of Milady II*"), 986 F.Supp. 158 (S.D.N.Y.1997), which held that the plaintiff in that case could not only claim a copyright in the actual design of the lace, but could also claim a copyright in "the way that lace is placed and arranged on the dresses." *Id.* at 161. Thus, the placement, arrangement, and look of the lace trim on the GH268 Tunic are copyrightable. Whether the actual scalloping of the lace trim is copyrightable (Express argues it is not because it is the least wasteful way of cutting the lace trim) is irrelevant—the point is that as a whole the look of the GH268 Tunic, as separated from its utilitarian elements, is copyrightable.

### b. Originality

■ "Originality, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345, 111 S.Ct. 1282. "[T]he requisite level of creativity is extremely low," *id.*, but "it is not negligible." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir.2003). "There must be something more than a 'merely trivial' variation, something recognizably the artist's own.'" *Id.*

■ The requisite originality for copyright protection can also be found in the combination of unoriginal (and therefore uncopyrightable) elements. Mere facts are not copyrightable, but the creative organization—choosing which facts to include and how to arrange them—of those facts may be. *Urantia Found.*, 114 F.3d at 958–59. For example, a phone book organized alphabetically does not meet the originality requirement because this presentation of facts (the names and phone

numbers) is "practically inevitable." *Feist*, 499 U.S. at 363, 111 S.Ct. 1282. On the other hand, the selection and organization of supposedly divinely delivered revelations (which were therefore not original to those claiming the copyright protection) was held to have enough originality to merit copyright protection. *Urantia Found.*, 114 F.3d at 959. Walking the line between combinations of unprotectable elements that can and cannot be afforded protection is a difficult task. In its most succinct statement of the law in this area, the Ninth Circuit stated that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work or authorship." *Satava*, 323 F.3d at 811. An important understanding underlying this statement of law is that "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Id.* at 810.

In applying its statement of copyright law with respect to combining unprotectable elements, the Ninth Circuit focused on whether the expressions in the work at issue varied from the standard manner of expressing the idea being expressed in the medium in which it was being expressed. *Id.* at 812 n. 5. The work in *Satava* was a glass-in-glass jellyfish sculpture and the Ninth Circuit found that it did not have the requisite originality for anything except very thin copyright protection. *Id.* at 812. In coming to its conclusion that the sculptures did not have the requisite originality for comprehensive copyright protection, the court first commented on the individual elements of the sculpture:

> Satava may not prevent others from depicting jellyfish with tendril-like tentacles or rounded bells, because many jel-

lyfish possess those body parts. He may not prevent others from depicting jellyfish swimming vertically, because jellyfish swim vertically in nature and often are depicted swimming vertically. Satava may not prevent others from depicting jellyfish within a clear outer layer of glass, because clear glass is the most appropriate setting for an aquatic animal. He many not prevent others from depicting jellyfish "almost filling the entire volume" of the outer glass shroud, because such proportion is standard in glass-in-glass sculpture. And he may not prevent others from tapering the shape of their shrouds, because that shape is standard in glass-in-glass sculpture.

*Id.* at 811. The court then found that the combination of all of these unprotected elements also did not merit protection:

> [t]hese elements are so commonplace in glass-in-glass sculpture and so typical of jellyfish physiology that to recognize copyright protection in the combination effectively would give Satava a monopoly on lifelike glass-in-glass sculptures of single jellyfish with vertical tentacles.

*Id.* at 812. The court reached this conclusion by comparing other glass-in-glass jellyfish sculptures and finding that they all contained most of the standard elements. *Id.* at 812 n. 5. However, the court did find that Satava had made some original contributions, such as the use of certain colors and distinctive shapes and found that to the extent these aspects of the sculpture did not necessarily follow from the physiology of the jellyfish or the glass-in-glass medium, they enjoyed "thin" copyright protection. *Id.* at 812. A thin copyright "protects against only virtually identical copying." *Id.* The Ninth Circuit's overriding concern in *Satava* appeared to be the threat of copyright protection expanding to the point of providing a monopoly on

commonplace expressions or expressions that are driven more by the limitations of the medium or the subject than by creativity.

In order to assess the originality of Fetish's GH268 Tunic, the Court first assesses the originality of the separate elements and then assesses the originality of the combination of those elements. Because the Court finds that the elements of the GH268 Tunic are not broadly protected, either separately or in combination, the Court then inquires into whether Fetish has a "thin copyright" in its GH268 Tunic.

 *Separate Elements.* Fetish is claiming copyright protection in the use of lace trim along the hemline, in the bodice area, in the back, and in the "moustache" area. Additionally, Fetish is claiming copyright protection in the use of the cut-out lace flowers on the lower right hip with the embroidery design. Express has submitted physical exhibits of eight tunics other than those at issue in this litigation ("Other Tunics"). (*See* Pampalone Decl. Ex. K–R.) These Other Tunics convincingly demonstrate that it is standard for lace trim to be used along the hemline and in the bodice area of a tunic or camisole. Many of these Other Tunics have the lace trim placed so that the lace trim substantially covers the silk along the hemline, just as in the GH268 Tunic. Additionally, almost all of these Other Tunics have lace along the upper back area of the tunic, though not with the extra cut-out rose in the middle, as in the GH268 Tunic. Two of the eight Other Tunics bear a flowers/stem/leaves design on one of the hip areas (admittedly, these Other Tunics are all short, so the flower and stem/leaves design falls higher on the wearer's body than in the GH268 Tunic, which is long (mid-thigh)). Two of the eight Other Tunics also have lace in the "moustache" area. In sum, just as in the glass-in-glass jellyf-

ish sculptures of *Satava,* lace along the hemline, upper back, bodice area, and moustache area; and a floral design off to one side of the bottom of the tunic appear to be standard elements of tunics. Not all of the standard elements are used on every tunic, but they appear with enough frequency that it would be a disservice to creativity to allow Fetish to claim a monopoly in the use of them.

*Elements in Combination.* As discussed above, the Court does not find that any particular element of the GH268 Tunic is original by itself. In looking at the Other Tunics, it is clear that the elements claimed in the GH268 Tunic are not only standard elements in isolation on tunics/camisoles, they are also standard elements in combination. Put differently, while not every element is incorporated into each of the Other Tunics, most of the elements are incorporated into most of the Other Tunics. Thus, it would be inappropriate for Fetish to essentially have a monopoly on the combination of those elements.

 *Thin Copyright.* While the combination of lace trim on the hemline, bodice area, upper back area, and moustache area of a tunic, along with an area of embroidered flowers/stem/leaves should not, in general, be considered protected by copyright law, Fetish does have thin copyright protection in the GH268 Tunic. In *Satava,* the Ninth Circuit indicated that a thin copyright may be established where some small amount of creativity exists beyond the combination of standard elements, but not enough creativity to qualify for broad protection. 323 F.3d at 812. "Thin" copyright protection guards only against virtually identical copying. *Id.* In the case of the GH268 Tunic, the creativity beyond the standard elements would be the embroidery design. The design is fairly intricate and does not represent, as

Express claims, the only way one can depict stems and leaves. Thus, the Court finds that Fetish has established some small amount of creativity beyond the standard combination of standard elements, such that the GH268 deserves thin copyright protection.

### 2. Copying of Protected Elements

 Express cannot rebut the presumption of validity, so now the question becomes whether Fetish can meet its burden of proving copying of protected elements. Because direct evidence of copying is generally unavailable, a copyright holder may establish copying by showing that the alleged infringer had access to the copyright holder's work and that the two works are "substantially similar." *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 481 (9th Cir.2000); *Jackson,* 84 F.3d at 1218. However, even where there is no proof of access, the [copyright holder] may prove copying by showing that the [copyright holder] and [alleged infringer's] works are "strikingly similar." *Three Boys Music,* 212 F.3d at 485. By the same token, where a high degree of access is shown, a lesser showing of substantial similarity is required. *Id.; Jackson,* 84 F.3d at 1218.

### a. Access

 To prove access, a plaintiff must show that the defendant had a reasonable opportunity to view or copy the plaintiff's work. *Three Boys Music,* 212 F.3d at 482. The Ninth Circuit defines a reasonable opportunity as "more than a 'bare possibility.'" *Id.* (quoting *Jason v. Fonda,* 698 F.2d 966, 967 (9th Cir.1982)). Reasonable access can be proven circumstantially by showing that (1) the plaintiff's work was widely disseminated or (2) a particular chain of events links the defendant to the plaintiff's work. *Id.*

In this case, Express has conceded that it had actual knowledge of the GH268 Tunic. (Pl.'s Answer & Affirmative Defenses ¶ 20.) Thus, this issue is not in dispute.

### b. Substantial Similarity ·

■ The Ninth Circuit applies a two-part test in determining substantial similarity: the extrinsic test and the intrinsic test. *Three Boys Music,* 212 F.3d at 485; *Jackson,* 84 F.3d at 1218. The extrinsic test looks at whether two works share a similarity of ideas and expression based on objective, external criteria. *Id.* First, the copyright holder must identify the concrete elements which are similar. *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1443 (9th Cir.1994). Second, the court must determine whether the allegedly similar elements are protected by copyright. *Id.* Third, the court must define the scope of the plaintiff's copyright—i.e., whether it is entitled to broad or thin protection. *Id.* In this case, Fetish claims that every concrete element of the GH268 Tunic is copied by the Express Long Camisole. The issues of protection and the breadth of that protection were discussed *supra.*

■ In contrast to the extrinsic test, the intrinsic test is subjective. *Three Boys Music,* 212 F.3d at 485. It asks "whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Id.* (internal quotation marks omitted). While expert testimony is generally appropriate in conducting the extrinsic test, *see Jackson,* 84 F.3d at 1218, expert testimony may not be considered in conducting the intrinsic test. *See Shaw v. Lindheim,* 919 F.2d 1353, 1356 (9th Cir.1990). Moreover, while analytic dissection of a work's elements is appropriate in conducting the extrinsic test, *Jackson,* 84 F.3d at 1218, the intrinsic test requires that the work's elements be viewed "as a whole." *Apple Computer,* 35 F.3d at 1443 (internal quotation marks omitted). *See also Data East USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 208 (9th Cir. 1988) (noting that "[a]nalytic dissection . . . is not appropriate under [the intrinsic] test because it distracts a reasonable observer from a comparison of the total concept and feel of the works"); *Olson v. Nat'l Broad. Co.,* 855 F.2d 1446, 1449 (9th Cir.1988) ("Although analytic dissection and expert testimony are appropriate under the extrinsic test, they are not appropriate under the intrinsic test."). Finally, while the intrinsic test is inherently subjective and therefore often inappropriate for summary judgment, "where the works are so overwhelmingly identical that the possibility of independent creation is precluded," it is not necessary for a jury to decide the questions raised by the intrinsic test. *Twentieth Century–Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1330 (9th Cir. 1983).

■ In this case, there can be no question that the embroidery designs on the GH268 Tunic and the Express Long Camisole are virtually identical. Looking at the two garments as a whole compels the same conclusion: the Express Long Camisole and the GH268 Tunic are virtually identical. The lace used on certain discrete areas of the Express Long Camisole (most notably the cut-out flowers with the embroidery design) varies slightly from the lace used on the GH268 Tunic. However, as in *Eve of Milady II,* even if the precise lace patterns are not identical, "when viewed on the [tunics] themselves, the slight discrepancies between the lace patterns are eclipsed by the almost total likeness in the arrangement and placement of the designs on the [tunics]." *Eve of Milady II,* 986 F.Supp. at 162. The Court thus finds that the Express Long Camisole is substantially similar to the GH268 Tunic

and therefore infringes Fetish's copyright in the GH268 Tunic.

## IV. CONCLUSION

The Court GRANTS summary judgment to Fetish: Fetish has a valid registered copyright; that copyright registration is at least as broad as the embroidery design; the embroidery design is original enough to deserve thin copyright protection; and the Express Long Camisole and the GH268 Tunic are virtually identical.

IT IS SO ORDERED.