**EVE OF MILADY and Milady Bridals, Inc., Plaintiffs,**

v.

**IMPRESSION BRIDAL, INC., and Nick Yeh, Defendants.**

**No. 96 Civ. 8893 (SAS).**

United States District Court, S.D. New York.

March 18, 1997.

Robert C. Faber, Marc Lieberstein, Ostrolenk, Faber, Gerb & Soffen, L.L.P., New York City, for plaintiffs.

Michael S. Elkin, Sharon P. Carlstedt, Reid & Priest, L.L.P., New York City, C. Steven McDaniel, Conley, Rose & Taylon, Houston, TX, for defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs Eve of Milady and Milady Bridals, Inc.[1] seek a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure restraining defendants from infringing their copyrights and trademarks, and engaging in unfair competition. Defendants argue, *inter alia,* that plaintiffs' delay in seeking injunctive relief warrants denying the motion. For the reasons stated below, plaintiffs' application is partially granted.

## I. Procedural Background

Plaintiffs filed this action on November 25, 1996. Shortly thereafter, on December 10, 1996, plaintiffs amended the Complaint.

With leave of Court, plaintiffs filed a Second Amended Complaint on February 19, 1997. In their Second Amended Complaint, plaintiffs assert two causes of action. In the first cause of action, plaintiffs interpose claims of false advertising and false designation of origin, pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition, pursuant to the common law of New York; and violations of state and federal anti-dilution laws pursuant to New York General Business Law § 368–d and Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). In the second cause of action, plaintiffs interpose five counts of copyright infringement in violation of 17 U.S.C. §§ 101 to 120.

Plaintiffs have now moved for two forms of equitable relief. First, plaintiffs seek an Order enjoining defendants from:

(a) representing that defendants' bridal dresses or other products are plaintiffs' products;

(b) displaying or otherwise using plaintiffs' proprietary marks in any way in connection with any advertising, display, solicitation of sales, promotion or distribution of defendants' bridal dresses;

(c) manufacturing, having manufactured and selling bridal dresses, including defendants' dress style Nos. 9669, 9670, 9671, 9672 and 9673 (hereinafter referred to collectively as "defendants' bridal dresses"), which are substantially similar to plaintiffs' bridal dresses and incorporate plaintiffs' copyrighted lace designs;

(d) copying, manufacturing, having manufactured or selling bridal dresses which include exact or substantially similar copies of any of the five lace designs designated as plaintiffs' Nos. V364, V431, V301, V444 and V358 (hereinafter referred to collectively as "copyrighted lace designs"), which are incorporated into plaintiffs' dress style Nos. 1222, 1223, 5078, 1224 and 5086 (hereinafter referred to collectively as "plaintiffs' bridal dresses"), respectively;

---

**1.** Milady Bridals, Inc. is a New York Corporation. Eve of Milady is an alternate business name of the principal owner of Milady Bridals, Inc., Eve Muscio. Both Eve of Milady and Milady Bridals, Inc. operate in the same business premises, manufacture and sell the same goods, and claim to suffer the same injuries as a result of defendants' conduct. *See* Second Amended Complaint at ¶ 1.

(e) copying, manufacturing, having manufactured, or selling exact or substantially similar copies of any of plaintiffs' copyrighted lace designs;

(f) filling orders for bridal dresses or other products which were based on defendants' display or other use of plaintiffs' bridal dresses incorporating plaintiffs' copyrighted lace designs.

Second, plaintiffs request an order from the Court requiring defendants to contact their customers and to recall all of defendants' bridal dresses (the "Recall Order").

Various affidavits, declarations and exhibits are presently before me. The parties have jointly waived an oral argument and evidentiary hearing on plaintiffs' motion for a preliminary injunction and on defendants' response thereto, and ask that I render my decision based solely upon documentary evidence. *See* Letter to Court from C. Steven McDaniel, Counsel for Defendants, received March 5, 1997 (confirming stipulation by parties to waive oral argument and hearing during telephone conference with the Court on February 26, 1997).

## II. Applicable Legal Standards

### A. Standards for Preliminary Injunction Pursuant to Rule 65

■ "Because of the great potential for harm which may occur from the issuance of a preliminary injunction, the party seeking the injunction must sustain a heavy burden." *Ringling Brothers–Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.,* 937 F.Supp. 204, 207 (S.D.N.Y.1996). The weight of this burden is well-settled. The party seeking such relief must demonstrate (1) irreparable injury and (2) a likelihood of success on the merits or a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor. *See Maryland Casualty Company v. Realty Advisory Board on Labor Relations,* 107 F.3d 979, 984 (2d Cir.1997); *Laureyssens v. Idea Group. Inc.,* 964 F.2d 131, 135–36 (2d Cir.1992). Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a

likelihood of success on the merits on one of the claims. *See Girls Clubs of America, Inc. v. Boys Clubs of America, Inc.,* 683 F.Supp. 50, 52 (S.D.N.Y.), *aff'd,* 859 F.2d 148 (2d Cir.1988). Because I find plaintiffs' copyright infringement claims provide a basis for granting a preliminary injunction, I will not address their other claims.

### B. Standards for Claim of Copyright Infringement

■ "In order to establish a claim for copyright infringement, a plaintiff must show ownership of a valid copyright and the defendant's infringement by unauthorized copying." *Laureyssens,* 964 F.2d at 139. In copyright law, it is axiomatic that "actual copying can be inferred from the defendant's access to the copyrighted work and substantial similarity between the copyrighted work and the alleged infringement." *Id.* Thus, a two-pronged analysis is used to determine whether a defendant has infringed a copyright. First, a plaintiff must "show that [her] work was actually copied by proving 'access and substantial similarity between the works.'" *Id. See also Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Then, it must be shown that this copying constituted an "improper" or "unlawful" appropriation through proof that "substantial similarities relate to protectible material." *Laureyssens,* 964 F.2d at 139–40; *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir.1946).

■ To determine whether there is a substantial similarity between the works of the plaintiffs and those of the defendants, the finder of fact must ascertain whether "the ordinary observer, unless [s]he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960) (L.Hand, J.). *See also Arica Institute, Inc. v. Palmer,* 970 F.2d 1067, 1072 (2d Cir.1992) (applying same standard and quoting *Peter Pan Fabrics, Inc.); Churchill Livingstone, Inc. v. Williams & Wilkins et al.,* 949 F.Supp. 1045, 1052 (S.D.N.Y.1996) (same). In cases involving a

design containing both protectible and unprotectible elements, however, the finder of fact may not rely on overall impressions to determine whether unlawful appropriation has occurred. *See Laureyssens,* 964 F.2d at 141 ("However, where a design contains both protectible and unprotectible elements, ... the observer's inspection must be more 'discerning,' ignoring those aspects of a work that are unprotectible in making the comparison."). *See also Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765–66 (2d Cir.1991).

III. Findings of Fact

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure [2], the following constitute findings of fact based on the record before the Court.

1. For several years, plaintiffs have designed and sold original bridal dresses. These dresses incorporate copyrighted lace designs. These lace designs have not been licensed to others for any use. *See* Declaration of Eve Muscio ("Muscio Decl."), dated February 4, 1997, at ¶ 3 and Exs. 1–6.

2. Eve Muscio, d/b/a Eve of Milady, drew each of the copyrighted lace designs which are the subject matter of this law suit. The lace punchers who assisted her in reproducing these lace designs assigned any of their potential claims to copyrights in these designs to Eve of Milady. *See* Supplemental Declaration of Eve Muscio ("Muscio Supp."), dated February 24, 1997 at ¶ 5 and Exs. D, E.

3. Milady's distribution policy is to sell its bridal dress designs to a limited number of retailers in a local market area. This policy is designed to promote Milady designs as "limited editions", thereby enhancing their appeal to the ultimate consumer. *See id.* at ¶ 6; Muscio Decl. at ¶ 27.

4. Impression Bridal, Inc. ("Impression") is a Texas corporation engaged in the business of manufacturing and selling bridal dresses. Nick Yeh is the president and owner of Impression. *See* Affidavit of Nick Yeh, dated February 18, 1997.

5. Milady contends that Impression has previously copied Milady dress styles. Milady took no action against Impression because it believed that these copies were of poor quality and thus posed no threat to Milady's interests.

6. On September 28, 1995, Milady introduced and published the five dress styles described above with the five copyrighted lace designs. Milady advertised its dress style 1223 in the December 1995—January 1996 issue of Bride's Magazine. Milady advertised all five dress styles in the February—March 1996 issue of Bride's Magazine. *See* Muscio Decl. at ¶¶ 7–8.

7. In recent months, defendants have been advertising, selling and filling orders for bridal dresses, five of which are strikingly similar to five of the bridal dresses designed by plaintiffs in terms of the featured lace designs as well as the overall dress style. *See* Muscio Decl. Exs. 9–14, 16.

8. Because defendants' dresses incorporate well-made copies of plaintiffs' designs, plaintiffs believe they will suffer serious harm to their reputation and business. *See id.* at ¶¶ 9, 17.

9. In a letter dated October 23, 1996,[3] plaintiffs' counsel sent defendants a letter by certified mail. This letter notified defendants of plaintiffs' copyrighted lace designs and demanded, *inter alia,* that defendants cease their unlawful conduct. *See id.* at Ex. 11. Defendants responded by letter dated November 5, 1996, but did not comply with plaintiffs' demands.

10. Plaintiffs filed this action on November 25, 1996. The litigants, subsequent attempts to resolve this matter out of court have failed.

IV. Discussion

A. Irreparable Harm

■ A presumption of irreparable harm arises where a plaintiff shows a likelihood of

---

**2.** "[I]n granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." Fed.R.Civ. P. 52(a).

**3.** Although the letter is dated October 23, 1996, it was not mailed until October 28, 1996. *See* Muscio Decl. at ¶ 24.

success on the merits of a copyright infringement claim. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978). The likelihood of success component of the preliminary injunction standard must be demonstrated to the Court. *See id.*

### B. Likelihood of Success on the Merits

#### 1. *Ownership of Copyrights*

As a threshold matter, plaintiffs must demonstrate ownership of a valid copyright. Plaintiffs have submitted copies of the Certificates of Copyright Registration for plaintiffs' five lace designs in support of their claim of infringement.[4] Defendants emphasize that dress designs are not copyrightable pursuant to 17 U.S.C. § 101, even assuming arguendo that plaintiffs hold a protectible interest in the five copyrighted lace designs. This argument misses the point.

 It is firmly established in the Second Circuit that clothes are not copyrightable. *See Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.1995); *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir.1989). However, fabric designs "are considered 'writings' for purposes of copyright law and are accordingly protectible". *Knitwaves Inc.*, 71 F.3d at 1002 (puffy applique artwork on sweaters is copyrightable); *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991) (rose-shaped textile design pattern is copyrightable). Because lace designs are a form of fabric designs, I find that plaintiffs' lace designs are copyrightable. Pursuant to 17 U.S.C. § 410(c), I further find that plaintiffs's Certificates of Copyright Registration constitute *prima facie* evidence demonstrating their valid ownership of the copyrighted lace designs.

#### 2. *Infringement by Defendant*

 The next hurdle confronting plaintiffs is to demonstrate infringement by defen-

dants of plaintiffs' copyrights. "Actionable copying can be inferred from the defendants' access to the copyrighted work and substantial similarity between the copyrighted work and the alleged infringement." *Laureyssens,* 964 F.2d at 139. Plaintiffs' copyrighted lace designs have not been licensed to others for any use. *See* Muscio Decl. at ¶ 3 and Exs. 1–6.

#### (a) *Defendants Access to Plaintiffs' Designs*

 Plaintiffs have met their burden of establishing that defendants had access to their lace designs. The December 1995–January 1996 issue of Brides Magazine contained a single advertisement for one of plaintiffs' bridal dresses at issue here, and the February–March 1996 issue of that magazine contained advertisements for all five of plaintiffs' bridal dresses. This public display of plaintiffs' bridal dresses and copyrighted lace designs in a bridal trade publication amounts to "access" by defendants to plaintiffs' copyrighted work. Defendants could also have purchased one of plaintiffs' dresses and thereby gained access to the lace designs. Accordingly, the first part of the copying standard is satisfied.

#### (b) *Substantial Similarities Between the Works*

An inspection of advertisements portraying plaintiffs' bridal dresses alongside defendants' bridal dresses provides additional indirect evidence regarding the extent of the similarity between the protectible elements of plaintiffs' and defendants' dresses. Although the idea of using a lace design is not entitled to copyright protection, a particular expression of the idea of using a lace design is copyrightable. *See Laureyssens,* 964 F.2d at 141. In deciding the question of "how far an imitator must depart" from the reproduction of the design, "one should consider the uses for which the design is intended, especially the scrutiny that observers will give to it as used." *Peter Pan Fabrics, Inc.*, 274 F.2d at 489. The use of lace designs in a

---

4. Plaintiffs have proffered Certificates of Copyright Registrations Nos. VA 786–611, VA 786–612, VA 808–301, VA 808–302, and VA 808–303, as *prima facie* evidence of their ownership of valid copyrights in the five lace designs at issue. *See* 17 U.S.C. § 410(c).

bridal gown will garner careful scrutiny by the bride who purchases and subsequently wears the gown, as well as by those who admire her when she wears the gown, both at the wedding ceremony and in photographs memorializing the nuptials.

. In support of the infringement allegations, plaintiffs offer a comparison of full page dress advertisements for both the plaintiffs' and defendants' bridal dresses. The lace designs featured in defendants' bridal dresses bear a striking similarity to the copyrighted lace designs featured in plaintiffs' bridal dresses. This similarity extends to the designs of the laces, as well as to the placements of the lace designs on the dresses. It is unlikely that a consumer or retailer would discern any sufficiently qualitative differences between the dresses—merely by inspecting them in a print advertisement—to distinguish one from the other. Therefore, I find that plaintiffs have demonstrated similarities that are probative of copying by defendants of plaintiffs' bridal dresses, satisfying the second part of the copying standard.

### 3. *Unlawful Appropriation*

I now turn to an analysis of the question of unlawful appropriation. It is the very lace designs in which plaintiffs hold valid copyrights that are similarly featured in the defendants' bridal dresses.[5] I therefore find that plaintiffs' have demonstrated such unlawful appropriation.

### C. Plaintiff's Alleged Delay in Filing Suit

It is true that plaintiffs cannot claim to face a risk of irreparable harm if they significantly delay in seeking injunctive relief. Such delay "tends to indicate at least a reduced need for such drastic, speedy action", *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985), and thus "tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial". *Majorica, S.A. v. R.H. Macy & Co.,* 762 F.2d 7, 8 (2d Cir.1985). The requirement that a plaintiff must seek injunctive relief in

a timely manner is flexible, and courts look to the facts of each case to determine the consequences of a plaintiff's delay. *See generally Museum Boutique Intercontinental, Ltd. v. Picasso,* 880 F.Supp. 153, 165 (S.D.N.Y.1995) (citing cases in which preliminary injunction was denied because of plaintiff's failure to seek immediate relief).

Defendants argue that plaintiffs should be precluded from obtaining injunctive relief because of their failure to take legal action with regard to defendants' alleged prior infringement of plaintiffs' designs, as well as their failure in this action to first seek a temporary restraining order, and finally for delaying the filing of this motion for a preliminary injunction for more than 75 days after the filing of the lawsuit. I disagree. Plaintiffs claim that they only recently determined that legal action was necessary because of the improved quality of defendants' copying.

The law does not require that a party seeking injunctive relief first apply for a temporary restraining order with respect to the allegedly unlawful activity. Prior to instituting this action, plaintiffs promptly sent a "cease-and-desist" letter to defendants addressing the very activity of which plaintiffs now complain. *See* Plaintiffs' Letter to Defendants, dated October 23, 1996. Defendants responded to this letter on November 5, 1996. *See* Plaintiffs' Letter to the Court, dated March 17, 1997, at Ex. A. By sending a letter to defendants prior to commencing this lawsuit, plaintiffs evidenced a desire to avoid litigation. Moreover, plaintiffs did not unreasonably delay in filing this action subsequent to the sending of their letter. To validate defendants' arguments here would require a plaintiff to commence a lawsuit immediately after sending a cease-and-desist letter, and strongly encourage litigation where a dispute might otherwise be settled out of court. *See, e.g., Encyclopaedia Britannica Educational Corp. v. Crooks,* 447 F.Supp. 243, 252 (W.D.N.Y.1978) (plaintiffs'

---

**5.** Defendants vigorously argue that plaintiffs' copyrightable lace designs at issue here comprise an insignificantly small percentage of the entire dress. I am not persuaded. Although the lace designs may indeed constitute a relatively small

percentage of the overall dress in terms of size, the lace design is nevertheless a critically important and distinguishing feature of the bridal dress.

"delay in raising the infringement question in the courts, caused in part by their attempts to reach an out-of-court compromise solution to a difficult and complex problem, should be commended rather than condemned").

For the reasons set forth above, I find that plaintiffs have demonstrated both irreparable harm and a likelihood of success on the merits with respect to their copyright infringement claim. Therefore, a preliminary injunction is an appropriate remedy in this case.

## V. Plaintiffs' Remedy

 Plaintiffs request that the Court order a general recall of each of defendants' knock-off dresses, and an order enjoining the filling of any orders for bridal dresses based on defendants' use of plaintiffs' designs. Plaintiffs' requested recall order would require Impression to contact its customers and the ultimate purchasers to recall all bridal dresses which utilize plaintiffs' copyrighted lace designs, as well as all advertisements, brochures or catalogs displaying such dresses. An injunction that prohibited defendants from filling orders would prevent defendants from delivering their knock-off dresses to consumers (both retail stores and the ultimate purchasers) who had already ordered, and perhaps paid for, those dresses. *See* Second Amended Complaint at pp. 13–14, ¶¶ B, C, D, E, K, J.

I am not convinced that a recall order would more effectively cure the harm caused by the sales of those dresses than a civil damages award. *See JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir. 1990) ("[W]here money damages are adequate compensation a preliminary injunction should not issue"). For consumers who have purchased dresses but have not yet been married, such an order would be a source of immediate prejudice to the brides who had planned to wear the defendants' dresses at their weddings. While the brides might be able to purchase the identical dress from plaintiffs, it is not clear that this could be accomplished in time for the wedding. Nor would a recall order cause less prejudice to consumers of infringing dresses who have

already worn their wedding dresses, for a bridal gown becomes the heirloom of the bride, evoking both fond memories of her wedding day and the hope that relatives or future offspring will wear it again.

The principles of equity cannot support such a drastic penalty against *bona fide* wedding dress purchasers simply because of the dress manufacturers' unlawful conduct. *See, e.g., Hecht Co. v. Bowles,* 321 U.S. 321, 329–30, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944) ("The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims"); *Virginian Ry. Co. v. System Federation No. 40,* 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937) ("Courts of equity may, and frequently do, go farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved"). For these reasons, I deny plaintiffs' request for a recall order and for an order enjoining defendants from filling orders for infringing dresses with regard to those orders placed by ultimate purchasers.

Orders placed by retailers, however, must be distinguished from those placed by ultimate consumers. Whereas, for reasons explained above, the latter category of orders may not be enjoined without causing prejudice to the brides who expect to wear defendants' dresses, the former category may be enjoined without causing the same prejudice to the retailers who expected to carry' defendants' dresses. I therefore grant plaintiffs' motion with regard to filling orders made by retail stores only.[6]

Plaintiffs have also demonstrated that they are entitled to an order preliminarily enjoining defendants from any future infringement of plaintiffs' copyrighted designs. It is accordingly

ORDERED that, as of March 18, 1997, until final decision of plaintiffs' claims, defendants, including their agents, servants, and

---

**6.** I decline to enjoin specific orders placed by retailers for individual ultimate purchasers for exactly the same reasons that I decline to enjoin orders by ultimate purchasers.

employees shall be restrained pursuant to Fed.R.Civ.P. 65(a) from:

(a) displaying or otherwise using plaintiffs' copyrighted lace designs in any way in connection with any advertising, display, solicitation of sales, promotion or distribution of defendants' bridal dresses;

(b) manufacturing, having manufactured and selling bridal dresses, including defendants' dress style Nos. 9669, 9670, 9671, 9672 and 9673 (hereinafter referred to collectively as "defendants' bridal dresses"), which are substantially similar to plaintiffs' bridal dresses and incorporate plaintiffs' copyrighted lace designs;

(c) copying, manufacturing, having manufactured or selling bridal dresses which include exact or substantially similar copies of any of the five lace designs designated as plaintiffs' Nos. V364, V431, V301, V444 and V358 (hereinafter referred to collectively as "copyrighted lace designs"), which are incorporated into plaintiffs' dress style Nos. 1222, 1223, 5078, 1224 and 5086 (hereinafter referred to collectively as "plaintiffs' bridal dresses"), respectively; and

(d) copying, manufacturing, having manufactured, or selling exact or substantially similar copies of any of plaintiffs' copyrighted lace designs.

(e) filling orders for defendants' bridal dresses that incorporate any of plaintiffs' copyrighted lace designs other than (i) those orders placed by ultimate consumers, or (ii) those orders placed by retail stores on behalf of individual ultimate consumers.

It is additionally ORDERED that, pursuant to Fed.R. Civ.P. 65(c) and 65.1, plaintiffs shall issue a bond in the amount of $75,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

So Ordered.