**TIP TOP CONSTRUCTION CORPORATION, Appellant/Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF PROPERTY AND PROCUREMENT, Appellee/Defendant**

S. Ct. Civil No. 2014-0006

Supreme Court of the Virgin Islands

April 11, 2014

STEFAN B. HERPEL, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI, *Attorney for Appellant.*

JENNIFER LYNN AUGSPURGER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

**OPINION OF THE COURT**

(April 11, 2014)

HODGE, *Chief Justice.* Appellant, Tip Top Construction Corporation ("Tip Top"), appeals the Superior Court's January 22, 2014 Order denying

its motion for a preliminary injunction. For the reasons that follow, we reverse and direct the Superior Court, on remand, to grant Tip Top's motion.

## I. BACKGROUND

The facts relevant to the sole issue on appeal are largely undisputed. On June 26, 2013, the Government of the Virgin Islands issued an Invitation for Bids for the "Main Street Enhancement Project." This project, which relies exclusively on federal highway funds, is intended to beautify and improve the Main Street area of Charlotte Amalie, St. Thomas, by, among other things, replacing existing sidewalks and roadways and building new ones in their place, installing street furniture and historic street lamps, planting palm trees, creating new storm drains, and relocating and reconstructing utilities. Only two companies — Tip Top and Island Roads Corporation ("Island Roads") — responded to the Invitation for Bids, with Tip Top submitting a bid of $8,441,108 and Island Roads responding with a bid of $10,377,620.

On October 31, 2013, the Evaluation Committee, consisting of seven voting and three non-voting members, reviewed both bids. The Evaluation Committee issued a November 8, 2013 Memorandum, which stated, in pertinent part, as follows:

> The committee discussed the evaluation process and commenced reviewing the two (2) responses received and found Tip Top Construction ("Tip Top") non-responsible for the proposed bid in the amount of *Eight Million Four Hundred Forty-one Thousand One Hundred Eight Dollars and Zero Cents ($8,441,108.00)* which was twenty percent (20%) lower than the Engineer's Estimate of *Ten Million Four Hundred Forty-four Thousand Five Hundred Seventy-five Dollars and Zero Cents ($10,444,575.00)*[.] A large number of items submitted by Tip Top showed significant variance between their proposed bid and the Engineer's Estimate making the bid mathematically unbalanced. Tip Top was also deemed non responsive for failure to sign their [Disadvantaged Business Enterprise ("DBE")] Commitment Forms. The committee commenced the review of the one (1) remaining bid and determined that Island Roads Corporation was rendered responsive and responsible to the solicitation.

(J.A. 852.) Having rejected Tip Top's bid, the Evaluation Committee recommended that the Government award the contract to Island Roads as the

sole "responsive and responsible bidder." (J.A. 853.) The Acting Commissioner of Property and Procurement apparently concurred,[1] and Tip Top was subsequently notified, by letter dated November 21, 2013, of the Government's decision.

Tip Top filed suit against the Government on December 16, 2013, alleging that the Department of Property and Procurement improperly rejected its bid despite being the lowest responsive bidder. That same day, Tip Top filed a motion for a temporary restraining order ("TRO") and preliminary injunction, which requested that the Superior Court enjoin the Government from entering into a contract with Island Roads. The Superior Court granted the request for a TRO in a December 19, 2013 Order, and scheduled a preliminary injunction hearing for December 30, 2013.

At the December 30, 2013 hearing, Tip Top presented testimony from two of its employees, Veronica Francis and Joseph Hollins. Afterwards, the Superior Court considered testimony from four of the Government's witnesses, all of whom served on the Evaluation Committee. Nicole Roberts, who served as Chair of the Evaluation Committee, testified generally to the rules and procedures that govern the process for receiving and evaluating bids, and through her testimony the Government introduced into evidence, as Exhibit 6, a copy of the November 8, 2013 Memorandum with the Commissioner's signature. Roberts testified that the Evaluation Committee's decision had been unanimous, and, without providing any further elaboration, reiterated that Tip Top's bid had been rejected both as mathematically unbalanced and for lacking a signature on a subcontractor's DBE form. Michael Farrington, a non-voting member, testified that he had discovered during the evaluation process that one of Tip Top's subcontractors had not signed the DBE form, and that he therefore believed Tip Top's submission had been incomplete, but did not testify to any other matters with respect to Tip Top's bid.

---

[1] Although the copy of the November 8, 2013 Memorandum that the Government introduced into evidence at the Superior Court's December 30, 2013 hearing as Exhibit 6 contains the Commissioner's signature, it does not explicitly specify that the Commissioner approved of the decision. Nevertheless, since the Government, by its November 21, 2013 letter, informed Tip Top that its bid had been rejected, and the Government has not, in the proceedings before the Superior Court or this Court, argued that it does not intend to enter into a contract with Island Roads, we assume that the Commissioner's signature represents approval of the Evaluation Committee's decision.

Wystan Benjamin, a voting member, provided more detailed testimony as to why the Evaluation Committee purportedly rejected Tip Top's bid. Although the November 8, 2013 Memorandum only gave two reasons — mathematical unbalance and the lack of a signature on the subcontractor's DBE form — for rejecting Tip Top's bid, Benjamin provided several additional reasons for the rejection, including (1) concern that the project would be almost exclusively performed at night, (2) that Tip Top might modify the contract at some future date to increase the costs, (3) the overall importance of Main Street to the Virgin Islands economy and the urgency of that the project be completed on time, and (4) "that Tip Top doesn't really know what . . . is required for this particular job." (J.A. 319.) Additionally, unlike the November 8, 2013 Memorandum, Benjamin identified, and discussed, specific line-items in Tip Top's bid that he believed were mathematically unbalanced. Finally, Nelson Petty, another voting member who also prepared the engineer's estimate, testified that the Evaluation Committee was particularly concerned with three items in Tip Top's submission — "[t]he brick pavers, the sidewalks, and the concrete pavement." (J.A. 363.)

The Superior Court, in a December 31, 2013 Order, extended the TRO to January 21, 2014. On January 22, 2014, the Superior Court declined to further extend the TRO, denied Tip Top's motion for a preliminary injunction, and advised that an opinion explaining the reasons for the decision would follow. Tip Top filed its notice of appeal with this Court on January 27, 2014, and on January 31, 2014, moved this Court for an injunction pending appeal. This Court, in a January 31, 2014 Order, extended the TRO through February 14, 2014, in order to provide this Court with sufficient time to consider Tip Top's motion, and for the Superior Court to issue its promised written opinion.

The Superior Court, in a February 7, 2014 Opinion, explained the reasons for its January 22, 2014 Order. In its Opinion, the Superior Court found that Tip Top satisfied three of the four requirements for issuance of a preliminary injunction, and rejected the Government's argument that the absence of a subcontractor's signature on a single form justified the rejection of Tip Top's entire bid as unresponsive. Nevertheless, the Superior Court denied the preliminary injunction because it concluded that Tip Top had little likelihood of succeeding on the merits. Specifically, the Superior Court credited Benjamin's oral testimony as to the additional reasons why the Evaluation Committee rejected Tip Top's bid, and

concluded that his testimony provided a rational reason for the Government to reject its bid notwithstanding the fact that it was the lowest responsive bidder. This Court, in a February 14, 2014 Order, granted Tip Top's motion for an injunction pending appeal. *Tip Top Constr. Corp. v. Gov't of the V.I.*, 60 V.I. 726 (V.I. 2014) (unpublished).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ This Court has jurisdiction over "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions." V.I. CODE ANN. tit. 4, § 33(b)(1). Additionally, Tip Top filed a timely notice of appeal on January 27, 2014. *See* 4 V.I.C. § 33(d)(5); *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 600-01 (V.I. 2011) (holding that the jurisdictional thirty-day filing deadline in section 33(d)(5) applies to appeals under section 33(b)). Therefore, we have jurisdiction to review the Superior Court's January 22, 2014 Order denying Tip Top's motion for preliminary injunction, while the underlying claims in Tip Top's action remain pending before the Superior Court. *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012) (citing *In re Najawicz*, 52 V.I. 311, 324-25 (V.I. 2009)).[2]

---

[2] In its brief, the Government argues — for the first time on appeal — that Tip Top purportedly lacks "standing" to bring this appeal, or to even have filed suit before the Superior Court, and requests that this Court not only dismiss this appeal, but also Tip Top's pending Superior Court complaint. Specifically, the Government contends that when federal highway funds are used to fund a project, the pertinent federal regulations require that the Federal Highway Administration concur in the non-award of a contract to the lowest possible bidder, and that the record contains no evidence that this agency issued a final decision on the matter.

Although the Government frames its argument as a standing issue, it is actually raising a ripeness argument, in that it challenges the timing of Tip Top's lawsuit, as opposed to Tip Top's suitability as a plaintiff. *See Armstrong World Indus. v. Adams*, 961 F.2d 405, 411 n.13 (3d Cir. 1992) ("The ripeness doctrine is often confused with the standing doctrine. Whereas ripeness is concerned with *when* an action may be brought, standing focuses on *who* may bring a ripe action.") (emphasis in original); *see also Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) ("A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). In any event, we decline to consider its argument, since ripeness, standing, mootness, and other doctrines stemming from the cases and controversies requirement of Article III of the Constitution of the United States are not jurisdictional as applied to Virgin Islands local courts, but represent mere claims-processing rules which are subject to waiver if not timely asserted. *See, e.g., Simon v. Joseph*, 59 V.I. 611, 629 (V.I. 2013); *In re K.J.F.*, 59 V.I. 333, 340 n.6 (V.I. 2013);

While this Court reviews the Superior Court's overall decision to grant or deny an injunction for abuse of discretion, this Court reviews the Superior Court's factual findings regarding likelihood of irreparable harm, harm to the nonmoving party, and whether the injunction is in the public interest only for clear error, while exercising plenary review of its conclusions of law. *Id.* at 554 (citing *In re Najawicz*, 52 V.I. at 328).

## B. Likelihood of Success on the Merits

■ In deciding whether to grant a preliminary injunction, the Superior Court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013) (quoting *Petrus*, 56 V.I. at 554). As mentioned above, the Superior Court, in its February 7, 2014 Opinion, held that Tip Top satisfied three of the four requirements for a preliminary injunction, concluding that (1) Tip Top established irreparable injury through a lost opportunity to compete on a level playing field for the contract; (2) the Government would not be harmed by granting a preliminary injunction based on testimony from the December 30, 2013 hearing in which Government witnesses testified that the project was not ready to break ground; and (3) that the public would benefit from careful consideration of Tip Top's claim that its bid was improperly rejected, given that it was nearly $2,000,000 less than the Island Roads bid. Additionally, the Superior Court rejected the Government's claim that Tip Top could not succeed on the merits because a missing signature on a subcontractor's DBE form rendered Tip Top's bid non-responsive, concluding that the absent signature constituted a waivable technical defect that would not warrant *per se* exclusion from consideration, particularly given that Tip Top is itself DBE-certified. Be-

---

*Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 565 (V.I. 2012); *Vazquez v. Vazquez*, 54 V.I. 485, 489-90 (V.I. 2010). Since the Government never opposed Tip Top's preliminary injunction motion on ripeness grounds during the Superior Court proceedings, but rather has raised its ripeness challenge for the first time in its appellate brief, its argument is clearly waived. *See Benjamin*, 56 V.I. at 565; *see also* V.I.S.CT.R. 4(h).

cause the Government in its brief explicitly takes the position that it would not go so far as to argue that that the Superior Court's findings were clearly erroneous or that the Superior Court abused its discretion in the weighing of those factors, (Appellee's Br. 12, 22), the sole issue before this Court is whether the Superior Court correctly held that Tip Top is unlikely to succeed on the merits because the Government properly rejected its bid as being mathematically unbalanced.[3] *See Petrus*, 56 V.I. at 554 (only reviewing analysis of the first preliminary injunction factor when Superior Court's analysis of the remaining three factors not challenged on appeal).

Before considering Tip Top's likelihood of success on the merits, we must determine the appropriate standard through which we review Tip Top's bid protest. In its February 7, 2014 Opinion, the Superior Court, relying on both federal and local case law, heavily emphasized that judicial review of procurement decisions are "extremely limited in scope," *Princeton Combustion Research Labs, Inc. v. McCarthy*, 674 F.2d 1016, 1021 (3d Cir. 1982), and that courts should not disturb such decisions unless they are arbitrary or irrational. *C&C/Manhattan v. Gov't of the V.I.*, 40 V.I. 51, 69 (V.I. Super. Ct. 1999) (citing *Princeton Combustion*, 674 F.2d at 1022). Based on these decisions, the Superior Court held that Tip Top was required to prove that the Government possessed no rational reason for its rejection, and determined that Tip Top could not meet this very high burden.[4]

■ We note that, in its complaint, Tip Top seeks two different forms of non-equitable relief. Specifically, Tip Top requests that the Superior Court

---

[3] As this Court noted in its February 14, 2014 Order, it is not clear whether the Superior Court applied a "sequential injunction test," in which a movant must prove all four preliminary injunction factors, or the "sliding-scale test," where the four factors are balanced and weighed and an injunction may be granted even if all four factors are not met. *Tip-Top*, 2014 V.I. Supreme LEXIS 15, at *8-9 (collecting cases). Importantly, this Court has explicitly refused to take a position as to the appropriate standard. *Yusuf*, 59 V.I. at 847 n.3. However, since we conclude Tip Top has established that it is likely to succeed on the merits on at least one claim, and thus established all four factors, we decline to decide which test to adopt, since Tip Top would be entitled to a preliminary injunction under either standard.

[4] In its appellate brief, the Government argues that, to obtain a preliminary injunction, Tip Top was required to prove its factual allegations by clear and convincing evidence, rather than by a preponderance of the evidence. However, because all the facts material to our analysis of the likelihood of success factor are undisputed — such as the fact that the Project is funded by federal highway funds — we decline to consider, as part of this appeal, whether Tip Top's motion for a preliminary injunction is subject to the preponderance of the evidence standard or the clear and convincing evidence standard.

issue a declaratory judgment stating (1) "that [the Government]'s rejection of its bid was improper and in violation of Virgin Islands statutes and regulations," and (2) "that in a properly conducted procurement, Tip Top was entitled to be selected as the awardee." (J.A. 886.) Clearly, Tip Top must meet a very high burden to attain the extreme remedy of a judicial declaration that it *must* be awarded the contract, in that it would have to prove that Island Roads's bid was so deficient, or Tip Top's bid so compelling, that the Government could not rationally award the contract to Island Roads over Tip Top. *Princeton Combustion*, 674 F.2d at 1021-22.

■ ■ The same is not true, however, for Tip Top's claim that the Government rejected its bid in violation of pertinent statutes and regulations. Importantly, the Superior Court overlooked that the arbitrary or irrational standard applies only with respect to reviewing the factual basis for the procuring agency's decision to award a contract to a particular vendor, and does not apply when determining questions of law. *See Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352-53 (Fed. Cir. 2004) ("[T]he central issue raised in the bid protest case before us relates to the correct interpretation of the solicitation issued by the [agency], which is a question of law . . . over which we exercise independent review."); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 342 (Fed. Cl. 2012) ("The Court concludes that it has the duty to determine independently any questions of law . . . that must be addressed in bid protests."). Notably, the judicial remedy for a statutory or regulatory violation is considerably narrower than outright awarding the contract to the disappointed bidder; rather, the disappointed bidder is only entitled to restoration of the status quo prior to the illegal act, which, in this case, would entail re-opening the procurement process so that the procuring agency may issue a new decision pursuant to procedures that are consistent with the law. *See, e.g., Turner Constr. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011) (identifying returning the contract process to the status quo ante as the remedy for an illegal procurement decision); *Beta Analytics Int'l, Inc. v. United States*, 69 Fed. Cl. 431, 434-35 (Fed. Cl. 2005) (ordering re-procurement as remedy for review of proposals pursuant to illegal procedure). Therefore, since the Government is not entitled to any deference with respect to questions of law, the Superior Court committed error to the extent it applied the arbitrary and

irrational standard to Tip Top's claim that the Government rejected its bid pursuant to a procedure not authorized by law.

■ Applying the correct legal standard, we conclude that Tip Top made a sufficient showing that it is likely to prevail on its claim that the Government rejected its bid in violation of pertinent regulations. In its February 7, 2014 Opinion, the Superior Court concluded that the procurement process for the Project was governed by Title 23 of the United States Code as well as Subpart A of Part 635 of Subchapter G of Chapter 1 of Title 23 of the Code of Federal Regulations, by virtue of the fact that the Government is relying on federal highway funds to pay for all of the construction.[5] *See, e.g., Lathan v. Brinegar*, 506 F.2d 677, 682-83 (9th Cir. 1974) (explaining that state highway departments receiving federal assistance for highway planning, design and construction must comply with 23 U.S.C. § 101 *et seq.*, as well as pertinent provisions in the Code of Federal Regulations); *Appalachian Mountain Club v. Brinegar*, 394 F. Supp. 105, 111 (D.N.H. 1975) ("Federal law is applicable because the construction financing is pursuant to the Federal-Aid Highway Program."). The Superior Court agreed with Tip Top that the Government was required to comply with section 635.114 of title 23 of the Code of Federal Regulations, which provides, in pertinent part, that

> (c) Following the opening of bids, the STD[6] shall examine the unit bid prices of the apparent low bid for reasonable conformance with the engineer's estimated prices. A bid with extreme variations from the engineer's estimate, or where obvious unbalancing of unit prices has occurred, shall be thoroughly evaluated.

---

[5] In its appellate brief, the Government, despite taking the position before the Superior Court that the pertinent federal regulations apply, argues, for the first time on appeal, that various provisions of local Virgin Islands procurement law and regulations support its rejection of Tip Top's bid. However, it is undisputed that the Main Street Enhancement Project is funded by federal highway funds. *See* 23 U.S.C. § 120(g) ("the Federal share payable on account of any project under this title in the Virgin Islands . . . shall be 100 per centum of the total cost of the project"). Consequently, the Government must therefore comply with federal law, even if it imposes greater or different requirements than local law.

[6] For purposes of this regulation, the term "STD" refers to a state or territorial "department, commission, board or official . . . charged by its laws with the responsibility for highway construction." 23 C.F.R. § 635.102.

(d) Where obvious unbalanced bid items exist, the STD's decision to award or reject a bid shall be supported by written justification. A bid found to be mathematically unbalanced, but not found to be materially unbalanced, may be awarded.

23 C.F.R. § 635.114. A bid is mathematically unbalanced if it "contain[s] lump sum or unit bid items which do not reflect reasonable actual costs plus a reasonable proportionate share of the bidder's anticipated profit, overhead costs, and other indirect costs," while a bid is materially unbalanced if it creates "a reasonable doubt that award to the bidder submitting a mathematically unbalanced bid will result in the lowest ultimate cost to the Federal Government." 23 C.F.R. § 635.102.

In its November 8, 2013 Memorandum awarding the contract to Island Roads, the Evaluation Committee stated that it received an application from Tip Top "which was twenty percent (20%) lower than the Engineer's Estimate of Ten Million Four Hundred Forty-four Thousand Five Hundred Seventy-five Dollars and Zero Cents ($10,444,575.00)." (J.A. 852.) Nevertheless, the Evaluation Committee concluded that Tip Top's bid should be rejected simply because "[a] large number of items submitted by Tip Top showed significant variance between their proposed bid and the Engineer's Estimate making the bid mathematically unbalanced," without providing any further elaboration. (*Id.*)

█ As noted above, the Superior Court indicated that the pertinent federal regulations require that unbalanced bids be "thoroughly evaluated," 23 C.F.R. § 635.114(c), and that when a mathematically — but not materially — unbalanced bid is submitted, any decision to reject the bid "shall be supported by *written* justification." 23 C.F.R. § 635.114(d) (emphasis added). The Superior Court concluded that the Evaluation Committee's statement, in a single sentence and without any other analysis, that Tip Top had submitted a mathematically unbalanced bid was a sufficient "written justification." While there do not appear to be any judicial decisions interpreting the phrase "written justification" found in section 635.114(d), we note that section 635.114(c) mandates that all unbalanced bids be "thoroughly evaluated," and that section 635.114(d) permits an agency to award a mathematically unbalanced bid. Additionally, advisory opinions issued by the Comptroller General of the United States — who may adjudicate bid protests under federal procurement law, 31 U.S.C. § 3554(a)(1) — provide that mathematical

unbalance, without more, cannot mandate rejection of a bid. *In re W.B. Construction & Sons, Inc.*, B-405818, 2012 U.S. Comp. Gen. LEXIS 26, *11 (Comp. Gen. 2012) ("While unbalanced pricing may increase risk to the government, agencies are not required to reject an offer solely because it is unbalanced."); *In re All Star Maintenance, Inc.*, B-231618, 1988 U.S. Comp. Gen. LEXIS 944, at *5 (Comp. Gen. 1988) ("[A] low evaluated bid cannot be rejected merely because it is mathematically unbalanced."). Thus, instead of applying a *per se* rule rejecting all mathematically — but not materially — unbalanced bids, we conclude that "where the [agency] receives an unbalanced bid or offer, the [agency] is required to consider the risks to the government associated with the unbalanced pricing in making the award decision, and whether a contract will result in unreasonably high prices for contract performance," with the offer being rejected only if the agency "determines that the lack of balance in the bid or offer poses an unacceptable risk to the government." *In re W.B. Construction & Sons*, 2012 U.S. Comp. Gen. LEXIS 26 at *11-12. Since the November 8, 2013 Memorandum simply states that Tip Top submitted a mathematically unbalanced bid, it is not possible to ascertain whether the Evaluation Committee performed such an analysis, or impermissibly applied a *per se* rule to exclude Tip Top's bid solely because it was mathematically unbalanced.

 Likewise, the Superior Court's decision to credit Benjamin's testimony cannot remedy the deficiencies with the November 8, 2013 Memorandum. As noted above, section 635.114(d) requires a written justification, and the Superior Court cited to no legal authority — and the Government has provided none in its brief — to support the proposition that an agency may supplement its written justification with the oral testimony of a single member. Significantly, the Evaluation Committee consists of nine members, some of whom are non-voting members, and Benjamin's name and signature do not appear on the portion of the November 8, 2013 Memorandum identifying which members approved of the document. But even if Benjamin participated in the Evaluation Committee's evaluations, courts have repeatedly held that the *post hoc* observations of a single member of a deliberative body should ordinarily

carry little, if any, weight.[7] *See, e.g., Heintz v. Jenkins*, 514 U.S. 291, 298, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) (A "statement [made] not during the legislative process, but *after* the statute became law . . . is not a statement upon which other legislators might have relied in voting for or against the Act, but it simply represents the views of one informed person on an issue about which others may (or may not) have thought differently"); *Quern v. Mandley*, 436 U.S. 725, 736 n.10, 98 S. Ct. 2068, 56 L. Ed. 2d 658 (1978) (noting that "post hoc observations by a single member of Congress carry little if any weight"); *Mason v. Village of El Portal*, 240 F.3d 1337, 1339-40 (11th Cir. 2001) (holding that discriminatory views of one member of five-member village council cannot be imputed to the entire council); *Illinois Citizens Committee for Broadcasting v. FCC*, 515 F.2d 397, 401-02, 169 U.S. App. D.C. 166 (D.C. Cir. 1974) (statement of single member of multi-member administrative agency "merely represents the unofficial expression of the views of one member" and "is not a decisional pronouncement affecting legal rights and obligations"); *Schwartz v. Town Planning & Zoning Comm'n*, 168 Conn. 285, 362 A.2d 1378, 1381 (1975) ("Evidence of the individual views of one member of a . . . commission is not competent to show the reasons actuating the commission or the grounds of its decision.").[8] Accordingly, since it appears the Government failed to provide a sufficient written justification for rejecting its bid, and the *post*

---

[7] In its appellate brief, the Government contends that the Commissioner of Property and Procurement possesses final authority to award a particular contract, and that the Evaluation Committee's decision simply represents a non-binding recommendation. (Appellee's Br. 14.) However, section 635.114(d), by its own terms, requires a *written* justification for rejecting a mathematically unbalanced bid, and the Commissioner did not provide any additional written reasons for rejecting Tip Top's bid and awarding the contract to Island Roads. Therefore, to the extent the Commissioner accepted the Evaluation Committee's recom- · mendation for reasons different from those set forth in the Evaluation Committee's November 8, 2013 Memorandum, the Commissioner's failure to set forth those reasons in writing likewise violates section 635.114(d).

[8] The dangers of relying solely on Benjamin's testimony to supplement the November 8, 2013 Memorandum is particularly pronounced in this case. As noted earlier, four members of the Evaluation Committee testified at the December 30, 2013 hearing, and all provided different reasons for why Tip Top's bid had been rejected. Roberts — the Committee Chair — testified to precisely the contents of the November 8, 2013 Memorandum: that Tip Top submitted a mathematically unbalanced bid, and failed to include a required signature. Farrington, a non-voting member, testified exclusively to the missing signature, without attributing the rejection to mathematical unbalance or any other reason. Benjamin, however, testified that the Evaluation Committee rejected Tip Top's bid because it was concerned that

*hoc* testimony of a single Evaluation Committee member cannot cure the insufficient justification, Tip Top has shown that it is likely to succeed on the merits with respect to the claim that the Government rejected its bid and awarded the contract to Island Roads in violation of pertinent law, and is thus entitled to a preliminary injunction.[9]

## III. CONCLUSION

As the arbitrary and irrational legal standard only applies to a procuring agency's factual determinations, the Government is not entitled to any special deference with respect to legal questions, such as whether it complied with pertinent statutes and regulations. Because we conclude that Tip Top has shown that it is likely to succeed on its claim that the Government summarily rejected its bid without a sufficient written justification in violation of section 635.114(d) of title 23 of the Code of Federal Regulations, and since the Government has not challenged the Superior Court's holding that the remaining three factors all favor the

---

the project would be almost exclusively performed at night, was afraid that Tip Top might modify the contract at some future date to increase the costs, recognized the overall importance of Main Street to the Virgin Islands economy and the urgency of that the project be completed on time, and believed "that Tip Top doesn't really know . . . what is required for this particular job." (J.A. 319.) In contrast, Petty, also a voting member, stated that the Evaluation Committee had been concerned with three particular items in Tip Top's submission — "[t]he brick pavers, the sidewalks, and the concrete pavement." (J.A. 363.)

[9] When, as here, a movant for a preliminary injunction sets forth two separate theories of relief, "[i]t is . . . not necessary for the Court to apply the 'likelihood of success on the merits' test to each of [the] theories, for satisfaction of that requirement as to any one theory is enough to support the injunction (provided the other requirements for injunctive relief are also satisfied)." *Instrumentalist Co. v. Marine Corps League*, 509 F. Supp. 323, 328 (N.D. Ill. 1981); *see Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484, 487 (S.D.N.Y. 1997) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits on one of the claims."); *Northern Pa. Legal Services, Inc. v. Lackawanna County*, 513 F. Supp. 678, 681-82 (M.D. Pa. 1981) ("The complainants need not prove that all of their claims are potentially meritorious in order to satisfy the first requirement for a preliminary injunction."); *see also Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC.*, 513 F. Supp. 2d 304, 314-19 (E.D. Pa. 2007) (granting a preliminary injunction based on a finding that plaintiff demonstrated a reasonable probability of success on the merits of one of ten alleged claims). Therefore, our holding that Tip Top is likely to succeed on the merits of its first claim — that the Government summarily rejected its bid without providing a sufficient written justification — should not be construed as a holding that Tip Top is likely to succeed on its second claim, in which it asserts that the Government is required to outright award it the contract.

grant of a preliminary injunction, we reverse the January 22, 2014 Order and remand the case so that the Superior Court may grant Tip Top's motion for a preliminary injunction[10] while it considers Tip Top's claims on the merits.

---

[10] In its brief and during oral argument, Tip Top requested that this Court remand this matter to the Superior Court either with instructions that it direct the Government to award it the contract, or to at least provide the Superior Court with specific guidance as to what law to apply with respect to that issue. However, since we exercise jurisdiction over this interlocutory appeal solely pursuant to 4 V.I.C. § 33(b)(1), which authorizes immediate appeals of orders denying a preliminary injunction, we decline to comment on the merits of any of the other issues currently being considered by the Superior Court. *See Gov't of the V.I. v. Seafarers Int'l Union*, 57 V.I. 649, 655 (V.I. 2013).